OPINION
{¶ 1} Plaintiff-appellant, Sheila J. Bell ("appellant"), appeals from the judgment of the Ohio Court of Claims entering summary judgment in favor of defendant-appellee, Ohio State Board of Trustees ("Board"), on appellant's claims for breach of contract, defamation, and intentional infliction of emotional distress. For the following reasons, we affirm. *Page 2 
 {¶ 2} Appellant, an African-American woman, alleges claims arising out of her enrollment in and ultimate dismissal from the Ohio State University College of Medicine ("OSUCOM"). The following facts are taken primarily from appellant's complaint in the Court of Claims.[1]
 {¶ 3} The events giving rise to appellant's claims began while appellant was completing her third-year medical school curriculum at OSUCOM. As part of her third-year curriculum, appellant completed a required two-month internal medicine rotation in July and August 1993, at the Cleveland Clinic Foundation ("Cleveland Clinic"), a location approved by OSUCOM. On August 27, 1993, at the conclusion of her rotation, appellant did not appear for her scheduled final examination and Objective Structured Clinical Examination ("OSCE") due to illness. Although appellant was initially rescheduled to make up her missed examinations on August 31, 1993, Dr. Roy St. John (Dr. St. John), the OSUCOM Clerkship Director, did not allow appellant to take the examinations. A memorandum from Dr. St. John, dated September 2, 1993, informed appellant that the Student Evaluation Committee had decided to impose an unsatisfactory grade for her internal medicine rotation based on "unexcused absences" and her failure to take the final examination and OSCE. The memorandum stated that appellant would need to repeat her two-month internal medicine rotation.
 {¶ 4} Appellant appealed the Student Evaluation Committee's decision to the Department of Internal Medicine Evaluation Committee, which determined that the *Page 3 
unsatisfactory grade would stand until appellant completed, as remediation, one month of an internal medicine rotation and passed the final examination and OSCE, after which her grade would be changed to satisfactory. Appellant filed numerous appeals from that determination, each of which was unsuccessful.
 {¶ 5} In March 1994, with her appeals still pending, appellant met with Jane Trask ("Trask"), the OSUCOM administrative assistant for Med III/IV, to schedule an internal medicine rotation at Mt. Carmel Hospital ("Mt. Carmel"), and Trask made the telephone contacts to arrange appellant's rotation at Mt. Carmel. After completing her Mt. Carmel rotation in April 1994, appellant attempted to schedule her final examination and OSCE, but appellant was informed that the Mt. Carmel rotation did not satisfy her remediation requirement because it was not completed at an Ohio State University hospital. Appellant contends that she had not been previously informed of any location restriction on her remediation rotation.
 {¶ 6} In May 1994, appellant again met with Trask, who told appellant that she would be eligible to participate in the June 1994 convocation ceremony, but would not be eligible to graduate in June 1994, due to unfulfilled curricular requirements. Dressed in her cap and gown, appellant appeared for the convocation ceremony on June 9, 1994, but was informed that she would not be permitted to participate. Appellant subsequently received a letter, dated June 7, 1994, informing her of her ineligibility to participate in convocation.
 {¶ 7} On June 22, 1994, appellant wrote to Dr. Sisson, chronicling the events stemming from her failure to take the final examination and OSCE after her Cleveland *Page 4 
Clinic rotation and her exclusion from the convocation ceremony, requesting an investigation.
 {¶ 8} Appellant was withdrawn from OSUCOM in May 1995. Although not alleged in appellant's complaint, the Court of Claims' October 20, 2006 decision granting summary judgment in favor of the Board states the following facts, apparently gleaned from the federal court opinions attached to appellant's complaint:
 * * * It is undisputed that [appellant] left the country and traveled to Africa from September 1994 through June 1995. Upon her return, she applied for reinstatement and was readmitted to OSU COM in May 1996; however, her readmission was conditional such that certain requirements [including a month-long clinical internal medicine rotation at the Ohio State University Medical Center and successful completion of the OSCE and final examination] were to be completed by July 31, 1997, or [appellant] would be subject to dismissal without the opportunity for reinstatement. [Appellant] did not accomplish the select tasks and she was notified in December 1997 that she had been dismissed from OSU COM.
(Footnote omitted.) See, also, Bell v. Ohio State Univ. (S.D.Ohio Feb. 5, 2002), case No. 2:98-CV-1274 ("Bell I"). Appellant does not dispute the Court of Claims' statement of facts regarding the events that transpired after she left for Africa and, in fact, incorporates such facts into her appellate brief.
 {¶ 9} Appellant first filed suit on July 6, 1998, in the United States District Court for the Eastern District of Michigan, which dismissed appellant's action without prejudice for lack of subject-matter jurisdiction. Appellant thereafter filed suit in the United States District Court for the Southern District of Ohio ("federal court") on December 17, 1998. In her federal court complaint, appellant named as defendants the Ohio State University ("OSU"); the Board; OSUCOM; the Ohio State University Medical Center ("OSUMC"); *Page 5 
and various employees and officers of OSU, OSUCOM, and OSUMC. Appellant's federal court complaint alleged race and gender discrimination, violations of equal protection, and violations of substantive and procedural due process in claims under Sections 1981, 1983, 1985, and 1986, Title 42, U.S. Code. Appellant also alleged state law claims for intentional infliction of emotional distress, defamation, and breach of contract.
 {¶ 10} The federal court dismissed appellant's claims in two separate opinions and orders. First, on October 17, 2000, the federal court dismissed appellant's Section 1985 and 1986 claims for failure to state a claim upon which relief could be granted. The federal court dismissed appellant's Section 1981 and 1983 claims for damages against OSU, OSUCOM, OSUMC, the Board, and the individual defendants in their official capacities for lack of subject-matter jurisdiction, pursuant to the Eleventh Amendment to the United States Constitution ("Eleventh Amendment"). The federal court also dismissed appellant's state law claims against OSU, OSUCOM, OSUMC, and the Board pursuant to theEleventh Amendment and dismissed appellant's state law claims against the individual defendants based on appellant's failure to obtain a determination from the Court of Claims regarding the individual defendants' entitlement to personal immunity.
 {¶ 11} Second, on February 5, 2002, the federal court granted summary judgment in favor of the defendants on appellant's remaining claims. The federal court concluded that appellant's remaining Section 1981 and 1983 claims were time-barred to the extent that they were based on events prior to July 6, 1996, i.e., two years before appellant first filed her claims in the Eastern District of Michigan. The federal court *Page 6 
rejected appellant's argument that the underlying acts were part of a continuing violation that brought all such acts within the limitations period, stating that, at most, appellant's allegations encompassed the continued ill effects of her unsuccessful completion of the internal medicine rotation.
 {¶ 12} After reviewing appellant's allegations of constitutional violations and the evidence presented, the federal court concluded that, even to the extent appellant's claims were timely, the defendants were entitled to summary judgment. The federal court found no substantive due process violation because the evidence clearly demonstrated that appellant was dismissed from OSUCOM for purely academic reasons, based on her failure to satisfy the conditions of her reinstatement. The federal court found no procedural due process violation because the evidence demonstrated that appellant received all process due her. Based on appellant's failure to present any evidence that she was treated differently than non-African-American or male students, the federal court found no equal protection violation. Lastly, the federal court granted summary judgment in favor of defendants on appellant's Section 1981 claim because appellant came forward with no direct evidence of purposeful discrimination on account of race and failed to establish a prima facie case of discrimination using circumstantial proof. The Sixth Circuit Court of Appeals affirmed the federal court's entry of summary judgment. See Bell v. Ohio State Univ. (C.A.6, 2003), 351 F.3d 240.
 {¶ 13} On October 16, 2001, while her federal claims remained pending in federal court, appellant filed her state law claims for breach of contract, defamation, and intentional infliction of emotional distress in the Court of Claims, naming the Board as the sole defendant. On November 19, 2004, the Court of Claims entered a stipulated *Page 7 
order, signed by counsel for appellant and the Board, dismissing appellant's claims "without prejudice to [their] renewal." Appellant refiled her state law claims against the Board in the Court of Claims on August 22, 2005.
 {¶ 14} On July 31, 2006, the Board filed a motion for summary judgment, arguing that appellant's claims were barred by the applicable statutes of limitations. The Board also argued that the doctrine of issue preclusion prevented appellant from relitigating her contention that her claims were based on a continuing violation and from relitigating the facts determined by the federal court in its adjudication of appellant's federal claims. Appellant opposed the Board's motion on August 15, 2006, arguing that her claims did not accrue until December 1997, and that she timely filed her claims in both the federal court and the Court of Claims. Appellant did not address the Board's issue preclusion arguments.
 {¶ 15} On October 26, 2006, after conducting an oral hearing, the Court of Claims granted the Board's motion for summary judgment and rendered judgment accordingly. The Court of Claims concluded that appellant's claims for intentional infliction of emotional distress and defamation were time-barred. Regarding appellant's breach of contract claim, the Court of Claims applied the doctrine of issue preclusion and concluded that issues of fact conclusively determined by the federal court precluded appellant's recovery on her breach of contract claim. Appellant filed a timely notice of appeal.
 {¶ 16} In her appellate brief appellant sets forth a statement of issues presented for review, but fails to separately state an assignment of error as required by App.R. 16(A)(3). The Board has not asked us to strike appellant's brief and has addressed the *Page 8 
issues raised therein. Because appellant's statement of issues presented for review adequately sets forth the matters upon which she seeks review, we construe those issues as assignments of error. See, e.g.,Leslie v Ohio Dept. of Dev., Franklin App. No. 06AP-628, 2007-Ohio-1170, at ¶ 40; Scotland Yard Condominium Assn. v. Spencer, Franklin App. No. 05AP-1046, 2007-Ohio-1239, at ¶ 13. Thus, appellant asserts the following assignment of error:
 Whether the Court of Claims erred by giving preclusive effect to the prior Federal Court Opinion and Order in granting Defendant/Appellee's Motion for Summary Judgment?
Appellant also argues, as she did in the Court of Claims, that she filed her state law claims within the applicable statutes of limitations.
 {¶ 17} In her assignment of error, appellant asserts that the Court of Claims erred by entering summary judgment in favor of the Board. Appellate review of summary judgment is de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 18} Pursuant to Civ.R. 56(C), a court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving *Page 9 
party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 358-359.
 {¶ 19} We begin our analysis with the Board's contention that appellant's claims are time-barred. Pursuant to R.C. 2743.16(A), civil actions against the state in the Court of Claims "shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." Appellant's claims for breach of contract and intentional infliction of emotional distress are subject to the R.C.2743.16(A) two-year statute of limitations. See Talmon v. Ohio StateLottery Comm. (Oct. 6, 1992), Franklin App. No. 92AP-693; Gleason v.Ohio Army Natl. Guard (2001), 142 Ohio App.3d 697. Because defamation claims between private parties are subject to a one-year limitations period, as set forth in R.C. 2305.11(A), appellant's defamation claim in the Court of Claims is likewise subject to the shorter limitations period. See Sabouri v. Ohio Dept. of Job Family Serv. (2001),145 Ohio App.3d 651, 654.
 {¶ 20} The Court of Claims found that appellant's claims for defamation and intentional infliction of emotional distress were time-barred and, with respect to such claims, granted summary judgment in favor of the Board based solely on the statutes of limitations. From appellant's complaint, the Court of Claims determined that appellant's *Page 10 
defamation claim accrued in September 1993, when Dr. St. John informed her that she had received an unsatisfactory grade on her internal medicine rotation because of unexcused absences and her failure to take the final examination and OSCE. The Court of Claims determined that appellant's intentional infliction of emotional distress claim arose in June 1994, when appellant was prohibited from participating in the convocation ceremony. The court rejected appellant's argument that all of her state law claims accrued on December 24, 1997, when she was formally dismissed from OSUCOM. We agree with the Court of Claims' conclusion that appellant's defamation and intentional infliction of emotional distress claims are time-barred.
 {¶ 21} In the absence of a factual dispute as to when a plaintiff's cause of action accrues, the application of the statute of limitations is a question of law. Cyrus v. Henes (1993), 89 Ohio App.3d 172, 175, reversed on other grounds (1994), 70 Ohio St.3d 640. The statute of limitations for defamation begins to run at the time the defamatory statement is published. Singh v. ABA Publishing Am. Bar Assn., Franklin App. No. 02AP-1125, 2003-Ohio-2314, at ¶ 22. Appellant's complaint makes clear that her defamation claim stems solely from Dr. St. John's statement, in his September 2, 1993 letter, that appellant was to receive an unsatisfactory grade on her internal medicine rotation due, in part, to unexcused absences. In her complaint, appellant characterizes Dr. St. John's reference to unexcused absences as "inaccurate and defamatory" and identifies no other defamatory statement. Because appellant's only allegation of a defamatory statement is Dr. St. John's written reference to unexcused absences, her defamation claim accrued, and the statute of limitations began to run, in September 1993. Appellant failed to file her defamation claim in any court within one year *Page 11 
thereafter, and the Court of Claims appropriately concluded that such claim was time-barred.
 {¶ 22} We next consider whether appellant's intentional infliction of emotional distress claim is time-barred. Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. Collins v. Sotka (1998), 81 Ohio St.3d 506,507. However, a cause of action for intentional infliction of emotional distress accrues when the tort is complete, that is, when the plaintiff is injured and the emotional impact is felt. Karlen v. Carfangia (June 2, 2001), Trumbull App. No. 2000-T-0081, citing Biro v. Hartman FuneralHome (1995), 107 Ohio App.3d 508, 514. As the court noted inBiro, at 514, "[i]t would be incongruous to allow a cause of action to accrue for emotional distress when there has not yet been any impact or injury." In Biro, the court concluded that the plaintiff's claim for intentional infliction of emotional distress, premised on a funeral home's interment of his father's remains in a manner inconsistent with the family's wishes, did not accrue until the plaintiff suffered injury upon learning the fate of his father's remains. Here, appellant was aware of the allegedly wrongful conduct at the time of its occurrence and does not allege that her emotional injury only later manifested itself. Thus, like the Court of Claims, we conclude that appellant's intentional infliction of emotional distress claim accrued at the time of the alleged wrongful conduct.
 {¶ 23} Appellant first filed her claim for intentional infliction of emotional distress on July 6, 1998, in the United States District Court for the Eastern District of Michigan. Even assuming that appellant properly commenced her claim at that time, her claim was timely only with respect to conduct that occurred after July 6, 1996. From her complaint, *Page 12 
it appears that appellant bases her intentional infliction of emotional distress claim on the refusal to allow her to participate in the June 1994 convocation ceremony. Such a claim is untimely. Appellant was immediately aware of the decision to exclude her from the convocation ceremony and questioned the propriety of that decision in her June 1994 letter to Dr. Sisson, more than four years before she filed a claim for intentional infliction of emotional distress.
 {¶ 24} Despite the untimeliness of an intentional infliction of emotional distress claim predicated on her exclusion from convocation, we look to appellant's complaint to determine if appellant alleges any conduct occurring after July 6, 1998, upon which she may base an intentional infliction of emotional distress claim. To constitute extreme and outrageous conduct, sufficient to give rise to a claim of intentional infliction of emotional distress, the conduct must be "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 375, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d. "[I]t is for the Court in the first instance to determine whether `defendant's conduct may be regarded as so extreme and outrageous as to permit recovery.' "Crawford v. ITT ConsumerFinancial Corp. (S.D.Ohio 1986), 653 F.Supp. 1184, 1192, quoting Restatement of the Law 2d, Torts (1965), Section 46, comment h.
 {¶ 25} Appellant's complaint contains limited allegations of conduct after July 6, 1996. In fact, appellant's only allegations of conduct after that date are that the Board prevented her from registering for the United States Medical License Examination ("USMLE") in the fall of 1997, and that OSUCOM officially dismissed her in 1997. Given *Page 13 
appellant's admission that she did not fulfill the conditions of her reinstatement to OSUCOM by July 31, 1997, as required, neither of appellant's allegations of conduct occurring in 1997 can be said to constitute extreme and outrageous conduct. Accordingly, any claim for intentional infliction of emotional distress stated in appellant's complaint accrued more than two years before appellant first filed her claim, and the Court of Claims correctly determined that such claim is time-barred.
 {¶ 26} In its motion for summary judgment, the Board also argued that appellant's breach of contract claim was time-barred to the extent that it was based on conduct occurring prior to July 6, 1996. Although the Court of Claims did not rely on the statute of limitations when granting summary judgment on appellant's breach of contract claim, we agree with the Board that appellant's breach of contract claim survives application of the statute of limitations only to the extent that it is based on conduct occurring after July 6, 1998.
 {¶ 27} We first reject appellant's argument that her breach of contract claims did not accrue until she was formally discharged from OSUCOM in December 1997. A cause of action for breach of contract accrues when the breach occurs or when the complaining party suffers actual damages. Thompson v. Ohio Dept. of Transp. (Nov. 26, 1996), Franklin App. No. 96API04-497, citing Midwest Specialties, Inc. v.Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 9. Appellant alleges that the Board committed various breaches of her student contract, including: failure to grant her a medical degree; refusal to give her credit for her internal medicine rotation at the Cleveland Clinic in 1993; refusal to allow her to make up her OSCE on August 31, 1993; failure to provide appeal processes as detailed in the student handbook; refusal to allow *Page 14 
appellant to perform her remediation rotation at Mt. Carmel in 1994; and refusal to allow her to take the USMLE. It is clear from appellant's complaint that she was aware of each alleged breach at the time it occurred, and there is no allegation that appellant incurred actual damages only at a later date. Thus, appellant's breach of contract claims accrued at the time of the alleged breaches, not in December 1997, upon her final dismissal from OSUCOM.
 {¶ 28} Much of the conduct that appellant claims breached her student contract occurred before appellant was first withdrawn from OSUCOM in May 1995, and her claims for such breaches accrued by that time. Appellant was immediately aware of all conduct that allegedly breached her contract during her original enrollment at OSUCOM. Appellant learned of her unsatisfactory grade on the Cleveland Clinic rotation on September 2, 1993, and, by April 1994, after numerous appeals, knew that she would not receive credit for her rotation unless she complied with specific remediation requirements. Appellant was aware of the refusal to allow her to make up her OSCE on August 31, 1993, and, again, knew by April 1994 that she would be permitted to take the OSCE only upon completion of specified remediation requirements. Appellant was aware of the refusal to credit her Mt. Carmel rotation as satisfaction of her remediation by May 1994. Appellant's allegations concerning the failure to provide specified appeal procedures stem from March 1994, when Seth Kantor, Associate Dean for Medical Education, informed her that the Student Progress Committee, rather than the Academic Review Board, would hear her appeal from her unsatisfactory grade, and April 1994, when Ernst Mazzaferri, Chair of Internal Medicine, upheld the Student Progress Committee's decision. At a minimum, appellant's claim for *Page 15 
breach of contract based on the refusal to give her credit for her Cleveland Clinic rotation, refusal to allow her to make up her OSCE on August 31, 1993, failure to provide specified appellate procedures, and refusal to allow her to perform her remediation at Mt. Carmel accrued more than two years before appellant first filed suit and was, accordingly, time-barred.
 {¶ 29} What remains of appellant's breach of contract claim is her claim that the Board breached her student contract based on the failure to grant her a medical degree and refusal to allow her to take the USMLE in the fall of 1997. Pursuant to the doctrine of collateral estoppel, the Court of Claims concluded that the Board was entitled to summary judgment based on facts conclusively determined by the federal court in its adjudication of appellant's federal law claims. The Court of Claims stated that appellant had the opportunity in federal court to fully litigate the facts underlying her claims and that the federal court, after reviewing all pertinent facts presented to the Court of Claims in support of appellant's state law claims, determined that appellant was dismissed from OSUCOM based upon her failure to redeem her academic performance despite being afforded opportunities to do so. On appeal, appellant argues that the Court of Claims erred by applying collateral estoppel to her breach of contract claim.
 {¶ 30} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, 381. Under the claim-preclusive branch of res judicata, "`[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties *Page 16 
or those in privity with them.' "Id., quoting Norwood v. McDonald
(1943), 142 Ohio St. 299, paragraph one of the syllabus. Under the issue preclusive branch of res judicata:
 "A point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action. * * *"
Scholler v. Scholler (1984), 10 Ohio St.3d 98, 105, quotingTrautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493; Goodson v. McDonoughPower Equip., Inc. (1983), 2 Ohio St.3d 193, paragraph one of the syllabus. Thus, "` "even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." ` "Scholler at 106, quotingTrautwein at 495.
 {¶ 31} "[W]here the identical issues raised by a plaintiff's state court complaint have been previously litigated in federal court, the doctrine of collateral estoppel precludes litigation of those same issues." Monahan v. Eagle Picher Industries, Inc. (1984),21 Ohio App.3d 179, 181, citing Bahramian v. Murray (Oct. 26, 1983), Hamilton App. No. C-820870. The Ohio Supreme Court has held that "[collateral estoppel applies when [a] fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Thompson v. Wing (1994), 70 Ohio St.3d 176, 183, citingWhitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, paragraph two of the syllabus. "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and *Page 17 
a `full and fair opportunity to litigate that issue in the first action.' "Cashelmara Villas Ltd. Partnership v. DiBenedetto (1993),87 Ohio App.3d 809, 813, quoting Goodson at 201.
 {¶ 32} Appellant first argues that the Court of Claims erred in giving preclusive effect to the federal court's factual findings because the federal court did not dismiss her state law claims on the merits. The federal court dismissed appellant's state law claims for lack of subject-matter jurisdiction under the Eleventh Amendment, which "deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of [the court's] jurisdiction." See Pennhurst State School Hosp. v. Halderman (1984),465 U.S. 89, 119-120. We agree with appellant that the federal court's dismissal of her state law claims on jurisdictional grounds did not constitute an adjudication on the merits. See Voisin's Oyster House,Inc. v. Guidry (C.A.5, 1986), 799 F.2d 183, 188. However, while such a conclusion precludes application of the claim preclusive branch of res judicata, it does not preclude application of collateral estoppel because the federal court decided appellant's federal law claims on the merits. Although the causes of action at issue in the federal court when it entered summary judgment differed from the causes of action before the Court of Claims, the causes of action need not be the same for collateral estoppel to apply. See Scholler at 106. Accordingly, the fact that the federal court did not consider the merits of appellant's state law claims is inconsequential to whether the trial court erred in applying collateral estoppel based on the federal court's factual findings on appellant's federal law claims.
 {¶ 33} Appellant next relies on the Ninth District Court of Appeals' opinion in Deryck v. Akron City School Dist. (Aug. 17, 1988), Summit App. No. 13442, in support of her argument that the Court of Claims erred in applying collateral estoppel. There, *Page 18 
Deryck filed a complaint in federal district court alleging deprivations of due process, statutory, and contractual rights. The district court entered summary judgment on Deryck's federal claims and refused to consider Deryck's pendent state law claims, and the Sixth Circuit affirmed the entry of summary judgment. When Deryck then filed a complaint in the Summit County Court of Common Pleas, reasserting the state law claims that the district court declined to consider, the trial court dismissed Deryck's claims on the basis of res judicata.
 {¶ 34} On appeal in Deryck, the Ninth District Court of Appeals framed the issue as "whether the federal court's dismissal of pendent state claims which were joined with a 1983 action triggers the application of res judicata therefore effectively barring further pursuit of one of the state claims in state court." The court stated: "When no federal jurisdiction remained, the federal claims having been decided, the court was correct in not considering the remaining state claims. Under these circumstances, it would work an injustice on the appellant to bar the state claim in state court." The Ninth District considered whether the federal court's dismissal of Deryck's state law claims on jurisdictional grounds barred subsequent litigation of such claims in state court under the claim preclusive branch of res judicata, focusing on whether theclaims were barred. While holding that Deryck's state law claims were not themselves barred because the federal court did not consider them, the court did not preclude application of collateral estoppel or issue preclusion in the subsequent state court action.
 {¶ 35} Here, the issue is not whether res judicata bars appellant's state law claims, but whether the facts determined by the federal court must be accepted here, entitling the Board to judgment as a matter of law, or whether appellant may relitigate *Page 19 
those facts. The Deryck court did not consider that question. In fact, the Deryck court's statement that, "[w]here the identical issues raised by a plaintiff's state court complaint have not been previously litigated in federal court, the doctrine of collateral estoppel does not preclude relitigation of those same issues[,]" suggests the court's recognition that collateral estoppel may, indeed, preclude relitigation of issues that have been previously litigated in federal court between the parties. Accordingly, we reject appellant's argument thatDeryck precludes application of collateral estoppel here.
 {¶ 36} It is undisputed that both appellant and the Board were parties to appellant's prior federal court action and that the federal court was a court of competent jurisdiction to consider appellant's federal claims. Our analysis, therefore, centers on whether the federal court actually and directly litigated and passed upon facts at issue in the Court of Claims. If so, collateral estoppel bars relitigation of such facts in the Court of Claims.
 {¶ 37} Appellant's federal and state law claims all stem from the same undisputed, operative facts and events, starting with appellant's failure to attend the final examination and OSCE after her internal medicine rotation at the Cleveland Clinic in September 1993, and culminating with appellant's final dismissal from OSUCOM in December 1997. The statement of facts in the federal court's summary judgment opinion is virtually identical to the facts alleged in appellant's Court of Claims complaint. In the Court of Claims, appellant alleged that the Board breached its contractual agreement, as governed by the student handbook, to provide her with a medical degree and to allow her to take the USMLE in the fall of 1997. Similarly, appellant's federal claims revolved around the reasons underlying her dismissal from OSUCOM, and *Page 20 
appellant relied on the same underlying facts in support of her claims in both the federal court and the Court of Claims. In her federal substantive due process claim, appellant argued that the decision to dismiss her from OSUCOM was made in bad faith and was arbitrary, capricious, and unfair. In evaluating that claim, the federal court necessarily considered the same allegations and evidence presented to the Court of Claims in support of appellant's state law breach of contract claim.
 {¶ 38} Upon its review of the evidence, the federal court concluded that "[t]he evidence clearly demonstrates that Plaintiff's dismissal was purely for academic reasons" and "was based on her failure to satisfy the conditions of her reinstatement to the medical school, namely, passage of the USMLE part I and failure to complete the Internal Medicine core rotation." Bell I. Appellant's reinstatement to OSUCOM was conditioned upon appellant's completion of specified requirements, including the completion of a one-month internal medicine rotation and passage of the USMLE, by July 31, 1997. According to the terms of her readmission, non-compliance with such requirements by July 31, 1997, subjected appellant to final dismissal from OSUCOM. Based on appellant's deposition testimony, the federal court found it undisputed that appellant failed to satisfy the requirements of her readmission by July 31, 1997.
 {¶ 39} The essential facts in this case concerned the same conduct that appellant alleged in support of her federal claims and upon which the federal court relied in granting summary judgment in favor of the defendants. Since the same evidence would provide the underlying facts in both proceedings, the issues are the same for purposes of applying collateral estoppel. See Fort Frye Teachers Assn. v. State Emp.Relations Bd. (1998), 81 Ohio St.3d 392, 397. Appellant was represented in *Page 21 
the federal court and had a full opportunity to litigate the reasons for her ultimate dismissal from OSUCOM on motion in that court. As a court of competent jurisdiction, the federal court determined the facts surrounding appellant's dismissal, and appellant may not relitigate those facts in her subsequent suit in the Court of Claims. Based on the facts, as determined by the federal court, the Board is entitled to judgment as a matter of law on appellant's claim of breach of contract based on the failure to grant her a medical degree and failure to allow her to take the USMLE in the fall of 1997.
 {¶ 40} For the above-stated reasons, we overrule appellant's assignment of error and affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
 PETREE and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The limited record before the Court of Claims consisted of: (1) appellant's complaint and attached exhibits, including the OSUCOM Student Handbook, the OSUCOM Med III/I v Course Offerings Catalog 1993-1994, and a letter, dated June 22, 1994, from appellant to Richard Sisson, Ph.D. ("Dr. Sisson"), Senior Vice-President of Academic Affairs and Provost; (2) the Board's answer; and (3) two opinions from the United States District Court for the Southern District of Ohio dismissing appellant's claims in her federal action against multiple defendants, including the Board. *Page 1