JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Plaintiff-appellant, Anna Ferrante ("Anna"), appeals the trial court's granting of summary judgment in favor of defendants-appellees, George Peters and Richard Collier (collectively "the officers"). Finding no merit to the appeal, we affirm.
 {¶ 2} In November 2001, Cleveland police received a 911 call from Jessie Presswood stating that as he and his wife were driving past a house on East 149th Street and Lytton Avenue in Cleveland, a man had "flashed a pistol." Presswood described the man as a white male in his late forties or fifties, wearing a dark jacket, and 5 feet 9 inches tall. Presswood told the police that the man had exited a black Dodge pick-up truck, "flashed" the gun, and gone into a house. The man then exited the house and put the gun in the truck. Presswood was also able to provide the truck's license plate number to the 911 operator.
 {¶ 3} Cleveland police dispatch issued a priority call with the description of the suspect, the truck, and the location and requested that officers respond to the scene. Dispatch also relayed that the suspect had been observed placing a gun in the truck. Two officers responded, Det. George Peters ("Peters") and Officer Richard Collier ("Collier"). Peters was in plain clothes and driving an unmarked Ford Taurus. Collier was in uniform and driving a marked police cruiser. As Peters and Collier approached the scene, they observed the black Dodge truck bearing the same license plate that had been provided by dispatch. The officers verified the location and other information with dispatch.
 {¶ 4} The officers observed Michael Ferrante ("Ferrante") exit the residence and walk to the truck. Anna was already in the truck. The officers became suspicious because, *Page 3 
when Ferrante saw them, he moved quickly toward the truck. The officers moved into position. Peters pulled his unmarked car in front of the truck and Collier positioned his marked car behind the truck.
 {¶ 5} The parties have differing versions of what happened next. The officers testified that they identified themselves as police officers and demanded that Anna and Michael Ferrante raise their hands in the air. The officers testified that instead of complying, the Ferrantes ducked down in the truck, and Michael Ferrante started the truck and backed into the police cruiser. The truck then lurched forward and accelerated, despite the officers' demands that he stop the truck. Peters testified at deposition that Ferrante drove the truck straight at him and almost hit him. Peters and Collier then fired between eight and ten shots at the truck, hitting it but missing the Ferrantes. The officers maintained that they did not fire their guns until after Ferrante accelerated the truck and began driving toward Peters.
 {¶ 6} The Ferrantes testified that they are owners of a construction company and were checking on one of their job sites on East 149th Street. The Ferrantes noted a "suspicious" red pick-up truck pass by the house a few times, presumably Presswood's vehicle. The Ferrantes decided to leave the job site because they were afraid that the occupants of the red pick-up were going to rob them or attempt to steal their truck. The Ferrantes testified at deposition that after they entered their truck, a blue Ford Taurus sped up alongside them and blocked their vehicle. They testified that a man jumped out of the Taurus, pointed a gun at them, and told them to get out of the truck. Both Anna and Michael *Page 4 
Ferrante testified that the officer did not identify himself and they never saw any lights or sirens. Michael Ferrante testified that he thought that the officer in the marked police cruiser behind his truck was "after" the man in the Ford Taurus. He and his wife claimed that the police started shooting before Ferrante put the truck in reverse and hit the police cruiser.
 {¶ 7} The Ferrantes sped away, but the police eventually apprehended them. No one was injured, and the police never recovered any weapons from the Ferrantes. Anna was not charged criminally. Michael Ferrante, however, was charged with several felonies, but pled guilty to a minor misdemeanor and was ordered to pay court costs and a $100 fine.
 {¶ 8} Michael and Anna Ferrante filed a complaint against Peters and Collier in state court asserting claims for civil rights violations under 42 U.S.C. Section 1983, battery, assault, false imprisonment, intentional and negligent infliction of emotional distress, trespass to chattels, and negligence. In December 2002, shortly after his plea in the criminal case, Michael Ferrante voluntarily dismissed his claims with prejudice.
 {¶ 9} The officers removed the case to federal court because the complaint alleged both federal and state law claims. The officers moved for summary judgment. The federal court granted the motion for summary judgment as to the Section 1983 claim, but declined to exercise jurisdiction over any remaining state law claims. In a thirty-one page opinion, the federal court found that Anna was not "seized" within the meaning of the Fourth Amendment and that the officers did not act in a "malicious and sadistic manner." *Page 5 
 {¶ 10} Anna appealed the district court's decision. She argued the district court erred in assessing her excess-force claims under the Fourteenth Amendment "shocks-the-conscience" test instead of the Fourth Amendment "reasonableness" standard. Ferrante v. Peters (C.A. 6, 2005), 135 Fed. Appx. 846. The appeals court upheld the district court's decision, holding that the officers had not "seized" Anna. Id. The court further found that Anna failed to appeal the district court's conclusion that the officers' conduct did not "shock-the-conscience"; thus she was unable to sustain her Fourth Amendment claim. Id.
 {¶ 11} The case was remanded to state court. The officers moved for summary judgment, arguing that the federal court's factual findings were law of the case and dispositive of the remaining state law claims. Anna filed her response, but did not address the officers' argument regarding the applicability of the federal court decision. Instead, she argued that the officers were not immune from liability because genuine issues of material fact remained regarding whether the actions of the officers were reckless, extreme, outrageous, and wanton. The officers filed a reply brief, in which they again argued that the federal court's factual findings were binding on the state case. The trial court granted the officers' motion for summary judgment, without opinion.
 {¶ 12} Anna appeals, raising one assignment of error, in which she argues that the trial court erred in granting summary judgment.
 Standard of Review *Page 6 {¶ 13} Appellate review of summary judgments is de novo. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in Zivich v. MentorSoccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, as follows:
 {¶ 14} "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem.Corp., 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264,273-274."
 {¶ 15} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138. *Page 7 
 {¶ 16} First, we note that Anna does not respond to the officers' argument that the factual findings of the federal courts are law of the case and binding on this court. In fact, Anna's appellate brief merely restates her response to the motion for summary judgment filed in the lower court. That being said, we will begin our de novo review.
 Officers' Statutory Immunity {¶ 17} R.C. 2744.03(A)(6) provides immunity for employees of political subdivisions, such as Officers Peters and Collier. Immunity exists unless "(a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) liability is expressly imposed upon the employee by a section of the Revised Code." Id.; see also Lee v. Cleveland, 151 Ohio App.3d 581, 2003-Ohio-742,784 N.E.2d 1218. By enacting this statute, the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out official duties unless one of the exceptions to immunity is established. Cook v. Cincinnati (1995),103 Ohio App.3d 80, 90, 658 N.E.2d 814. We therefore begin with a presumption of immunity.
 {¶ 18} Anna's sole assignment of error is based on the presumption that an issue remains as to the applicability of the exception to immunity under R.C. 2744.03(A)(6)(b). The officers argue, however, that the findings reached by the federal district and appellate courts preclude any finding other than that the officers acted in good faith. Therefore, the *Page 8 
officers argue, there can be no dispute that the exception set forth in R.C. 2744.03(A)(6)(b) does not apply and the officers were entitled to summary judgment. Again, Anna does not respond to this argument.
 {¶ 19} Instead, Anna focuses her argument on the contention that the officers are not entitled to immunity because they acted with malicious purpose, in bad faith, and in a wanton and reckless manner. Specifically, she argues that the officers acted without regard to her or the public's safety, and the officers began shooting at the truck before the truck ever moved. The officers dispute this fact, arguing that the Ferrante vehicle had already bumped the police cruiser and was driving toward Peters when they opened fire. It is this disputed fact, Anna argues, that precludes summary judgment. For the following reasons, we disagree.
 Collateral Estoppel {¶ 20} The doctrine of res judicata involves both claim preclusion and issue preclusion. Grava v. Parkman Twp., 73 Ohio St.3d 379, 381,1995-Ohio-331, 653 N.E.2d 226. Issue preclusion, traditionally known as collateral estoppel, prohibits the relitigation of a point of law or a fact which was actually and directly in issue in a former action.Scholler v. Scholler (1984), 10 Ohio St.3d 98, 105, 462 N.E.2d 158, citing Trautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493,391 N.E.2d 326. So long as the point of law or fact was passed upon and determined by a court of competent jurisdiction, it may not be drawn in question in a subsequent action between the same parties or their privies. Id. "The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue *Page 9 
raised in the prior action." Id. Thus, "even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Scholler at 106.
 {¶ 21} "[W]here the identical issues raised by a plaintiff's state court complaint have been previously litigated in federal court, the doctrine of collateral estoppel precludes litigation of those same issues." Bell v. Ohio State Bd. of Trustees, Franklin App. No. 06AP-1174, 2007-Ohio-2790, quoting Monahan v. Eagle Picher Industries,Inc. (1984), 21 Ohio App.3d 179, 181, 486 N.E.2d 1165. The Ohio Supreme Court has held that "[c]ollateral estoppel applies when [a] fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party [or] in privity with a party to the prior action." Thompson v.Wing, 70 Ohio St.3d 176, 183, 1994-Ohio-358, 637 N.E.2d 917. "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a `full and fair opportunity to litigate that issue in the first action.'" CashelmaraVillas Ltd. Partnership v. DiBenedetto (1993), 87 Ohio App.3d 809, 813,623 N.E.2d 213.
 {¶ 22} In Bell, the court found that "although the causes of action at issue in the federal court differed from the causes of action in [state court], the causes of action need not be the same for collateral estoppel to apply." Id. at 26. The court also concluded that *Page 10 
collateral estoppel bars relitigation of issues decided by a federal court even if, as in the instant case, the federal court declines to exercise pendent jurisdiction over any remaining state law claims. Id.
 {¶ 23} As in Bell, the first issue we must decide is whether the facts and legal findings determined by the federal court must be accepted here, entitling the officers to judgment as a matter of law, or whether Anna may relitigate those issues.
 {¶ 24} In determining whether Anna's state law claims are barred, it is undisputed that both she and the officers were parties to the prior federal court action, and the federal court was a court of competent jurisdiction to consider her federal claims. Our analysis thus centers on whether the federal court actually and directly litigated and passed upon facts at issue in the current case and whether the federal court's legal findings are binding on this court. If the answer to both questions is "yes," then collateral estoppel bars relitigation of her claims in state court.
 Wanton or Reckless Manner {¶ 25} A review of the both the federal and state claims shows that all of the claims arise out of the same operative facts, even though some of the facts are in dispute. As to both the federal and state claims, Anna alleged the officers' actions were motivated by malice.
 {¶ 26} In evaluating Anna's Section 1983 claims, the federal court necessarily considered the same allegations and evidence presented to the state court in support of her state law tort claims. After a review of the evidence, the federal district court made the *Page 11 
following factual determinations pertinent to this case: (1) the officers had no reasonable opportunity for deliberation and were called upon to make an instantaneous judgment call; and (2) the officers were relying on information from dispatch that the suspect (who matched Michael Ferrante's description) had a gun in his truck and was potentially dangerous.
 {¶ 27} The federal court also determined that the officers did not violate Anna's civil rights, their conduct was not malicious or sadistic, and their actions were made in a good faith effort to maintain or restore order. The federal court concluded that no rational fact-finder could conclude that the officers acted with malicious or sadistic purpose.[1]
 {¶ 28} On appeal to the federal appellate court, Anna did not appeal the district court's conclusion that the officers acted in good faith; thus, the appellate court declined to address that issue. SeeFerrante at 849.
 {¶ 29} Although Anna argues that the officers also acted with malice and bad faith, we find that the district court expressly found that the officers did not act with malice or bad faith. Thus, the next issue to decide is whether the federal court's finding that the officers did not act with a malicious or sadistic purpose necessarily means they did not act in a wanton or reckless manner. *Page 12 
 {¶ 30} "An individual acts `recklessly' when he `does an act or intentionally fails to do an act which is in his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" Hunter v. Columbus (2000), 139 Ohio App.3d 962,969, 746 N.E.2d 246, citing Lipscomb v. Lewis (1993), 85 Ohio App.3d 97,102, 619 N.E.2d 102, 105.
 {¶ 31} Wantonness is described as a "degree greater than negligence." Id. Wanton misconduct is the failure to exercise any care whatsoever.Fabrey v. McDonald Police Dept., 70 Ohio St.3d 351, 356, 1994-Ohio-368,639 N.E.2d 31. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Id., citing Roszman v. Sammett (1971),26 Ohio St.2d 94, 269 N.E.2d 420.
 {¶ 32} Courts often use the word "reckless" interchangeably with "wanton." See Thompson v. McNeill (1990), 53 Ohio St.3d 102,559 N.E.2d 705. Moreover, this court has found that the terms wanton and reckless are functional equivalents of each other. Sparks v. Cleveland, Cuyahoga App. No. 81715, 2003-Ohio-1172. Furthermore, both terms appear in the R.C. 2744.03(A)(6)(b) immunity provision along with "malicious purpose, in bad faith." We find these terms operate conjunctively to define the scope of one of the three immunity *Page 13 
exceptions in R.C. 2744.03(A)(6). Therefore, it is not necessary to distinguish between the terms.
 {¶ 33} Although we do not equate the terms "reckless" and "wanton" with bad faith and malice, we do not see, nor does Anna argue, how we could make a finding that the officers' actions were wanton and reckless after a court of competent jurisdiction has previously held that the officers' actions were in good faith and without malice. Thus, we agree with the officers that the federal court's findings preclude a different result in the instant case.
 {¶ 34} Even if we found that the federal court's findings did not preclude a finding that the officers acted with reckless or wanton behavior, we still would uphold the state court's granting of summary judgment. Anna argues that there are factual issues in dispute. However, merely because a particular element of a claim or defense involves a question of fact does not automatically preclude the claim or defense from a determination under summary judgment. Sparks, supra citing,Wagner v. Heavlin (2000), 136 Ohio App.3d 719, 727, 737 N.E.2d 989.
 {¶ 35} Given the record in the instant case, we conclude that Anna failed to meet her reciprocal burden under Dresher to set forth a genuine issue of material fact. Based on our review of the record and the federal court's findings, she has at best shown that the officers were negligent in failing, as the district court found, to clearly identify themselves as police officers when they arrived on the scene. That being said, it is well settled that a police officer *Page 14 
is not civilly liable for claims of negligence arising from the performance of his official duties. See Fabrey at 356.
 {¶ 36} Therefore, the assignment of error is overruled.
 {¶ 37} Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCURS; CHRISTINE T. McMONAGLE, J., DISSENTS. (SEE ATTACHED DISSENTING OPINION.)
[1] The test applied by the United States Supreme Court to determine whether police use excessive force is whether the alleged conduct "shocks the conscience." County of Sacramento v. Lewis (1998),523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118 S. Ct. 1708. An officer's reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."Claybrook v. Birchwell (C.A. 6, 2000), 199 F.3d 350, 359, quotingLewis, at 852-853.