[Cite as *Colaianni Constr., Inc. v. Ohio School Facilities Comm.*, 2017-Ohio-7156.]

| | |
|---|---|
| COLAIANNI CONSTRUCTION, INC. | Case No. 2017-00063 |
| Plaintiff | Referee Dale A. Crawford |
| v. | <u>DECISION OF THE REFEREE</u> |
| OHIO SCHOOL FACILITIES COMMISSION | |
| Defendant | |

{¶1} Before the Court are three motions for the Court's determination in this case arising from a dispute concerning a public improvement project:

(1) "Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment" filed on February 16, 2017 by Defendant Ohio School Facilities Commission (OSFC),

(2) "Defendant's Motion To Dismiss Plaintiff's First Amended Complaint Or In The Alternative Motion For Summary Judgment" filed on March 16, 2017 by OSFC, and

(3) "Defendant's Motion To Strike Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment" filed on April 20, 2017 by OSFC.

For reasons set forth below, the Referee recommends that OSFC's "Motion to Dismiss Or In The Alternative Motion for Summary Judgment" of February 16, 2017 should be denied; that OSFC's "Motion to Dismiss Plaintiff's First Amended Complaint Or In The Alternative Motion for Summary Judgment" of March 16, 2017 should be denied; and, that OSFC's "Motion To Strike Plaintiff's Memorandum In Opposition to Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment" of April 20, 2017 should be denied.

## I. Background

{¶2} On January 19, 2017, Colaianni Construction, Inc. ("Colaianni") sued OSFC in a breach-of-contract action pertaining to a public improvement project located in the Indian Creek Local School District in Jefferson County, Ohio. Thereafter, on February 16, 2017, OSFC moved the Court to dismiss Colaianni's Complaint pursuant to Civ.R. 12(B)(6) and it alternatively moved for a summary judgment in its favor.

{¶3} Fourteen days after OSFC filed its motion and alternative motion, Colaianni filed a First Amended Complaint and contemporaneously moved for an extension to file a memorandum in opposition to OSFC's motions of February 16, 2017. The Court denied Colaianni's request for an extension.

{¶4} On March 16, 2017, OSFC moved the Court to dismiss Colaianni's First Amended Complaint pursuant to Civ.R. 12(B)(6) and moved in the alternative for summary judgment in its favor. Colaianni sought an extension to respond to OSFC's motions of March 16, 2017 and leave to exceed this Court's local rules pertaining to page limitations for opposing memoranda. The Court granted in part Colaianni's request, ordering Colaianni to file a memorandum in opposition on or before April 6, 2017 and limiting its memorandum to 20 pages, exclusive of attachments.

{¶5} On April 6, 2017, Colaianni filed a response in opposition. Fourteen days later, on April 20, 2017, OSFC moved the Court to strike Colaianni's response of April 6, 2017. On May 4, 2017, Colaianni filed a response in opposition to OSFC's motion to strike.

## II. Because OSFC's Motion to Dismiss and Alternative Motion for Summary Judgment of February 16, 2017 are moot, those motions should be denied.

{¶6} In the Court's entry denying Colaianni's request for an extension to file a response to OSFC's motions of February 16, 2017, the Court noted: "OSFC's motion to dismiss and alternative motion for summary judgment is [sic] directed toward Colaianni's original complaint, which is no longer at issue due to Colaianni's filing of a

first amended complaint as a matter of course in accordance with Civ.R. 15(A). * * * Colaianni's first amended complaint is the pleading at issue, which requires OSFC to file a responsive pleading or a motion permitted by the Ohio Rules of Civil Procedure." Because OSFC's motion and alternative motion of February 16, 2017 are directed toward a pleading that is no longer at issue, namely Colaianni's original complaint, the Court finds that OSFC's motions of February 16, 2017 are moot. *See City of Grove City v. Clark*, 10th Dist. Franklin No. 01AP-1369, 2002-Ohio-4549, ¶ 11, quoting *Culver v. City of Warren*, 84 Ohio App. 373, 393, 83 N.E.2d 82 (11th Dist.1948) (citations omitted) ("'Actions or opinions are described as "moot" when they are or have become fictitious, colorable, hypothetical, academic or dead.'"). And since OSFC's motion and alternative motion of February 16, 2017 are moot, the Court determines that those motions should be denied because courts generally do not resolve issues or controversies that are moot. *See State v. Marcum*, 2015-Ohio-5237, 54 N.E.3d 719, ¶ 6 (10th Dist.); *Lingo v. Ohio Cent. R.R.*, 10th Dist. Franklin No. 05AP-206, 2006-Ohio-2268, ¶ 20.

### III. OSFC's "Motion To Strike Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment" filed on April 20, 2017 should be denied.

{¶7} OSFC has moved the Court to strike Colaianni's memorandum in opposition of April 6, 2017 "in its entirely [sic]," as well as certain attachments to Colaianni's filing, "including the Affidavit of David Wodesky, and specifically affidavit statement numbers 13 through 20 inclusive; MKC Sheet 2.07 dated June 2015; Colaianni letter to the Project Team dated October 2, 2015; and, the [school district's] letter to Colaianni dated November 5, 2015" because, according to OSFC, those items constitute privileged mediation communications under R.C. 2710.03 and Evid.R. 408. With its motion, OSFC filed certain affidavits and associated exhibits under seal for an in camera inspection by the Court.

{¶8} In opposition, Colaianni contends that communications identified by OSFC as objectionable are admissible because they pertain to Colaianni's right, as well as its

attempts, to cure and that the documents that OSFC seeks to strike do not reference mediation or settlement negotiations.  Colaianni reasons that, if the Court were to strike communications of October 2015 and November 2015, this would mean that Colaianni's contract balance has not accrued because it has not been provided an opportunity to cure outside of mediation.

{¶9} Whether to grant or deny OSFC's motion to strike is within this Court's discretion.  *See Bester v. Shilo*, 8th Dist. Cuyahoga No. 89355, 2007-Ohio-6987, ¶ 18 ("Our standard of review for a motion to strike is abuse of discretion by the trial court"). Subject to exceptions, a mediation communication is privileged.  R.C. 2710.03; 2710.05. Pursuant to R.C. 2710.01, as used in R.C. 2710.01 to 2710.10, a "mediation communication" means "a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator."  The Court has reviewed the items identified by OSFC as objectionable and the materials that OSFC filed under seal with its motion to strike.  The Court finds that Wodesky's affidavit, a copy of Colaianni's letter dated October 2, 2015, and a copy of the school district's letter dated November 5, 2015 do not constitute nonverbal statements that are made for the purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator.  Rather, the objectionable items pertain to a proposal that resulted from mediation *after* the mediation concluded.  *See Hopes v. Barry*, 11th Dist. Ashtabula No. 2010-A-0042, 2011-Ohio-6688, ¶ 35 (rejecting argument that emails constituted a mediation communication) ("In this matter, the emails sent from Attorney Piper were not made 'during a mediation.' They were sent several weeks after the mediation ended").  The Court determines that these items identified by OSFC as objectionable are not "mediation communications," as set forth in R.C. 2710.01.

{¶10} Moreover, although OSFC has filed under seal an affidavit of attorney Desmond J. Cullimore containing an averment that MKC Sheet 2.07 dated June 2015 is

part of a mediation communication, the Court finds that such an averment is tantamount to a determination concerning a question of law, which is within the Court's province to determine. *See Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 735 N.E.2d 433 (2000) ("The application of Section 80 [of a city zoning ordinance] to the facts is a 'question of law'—'an issue to be decided by the judge, concerning the application or interpretation of the law.' Black's Law Dictionary (7 Ed.1999) 1260. That the application of Section 80 to this case involved a consideration of facts or the evidence did not turn this question into a question of fact. *O'Day v. Webb* (1972), 29 Ohio St. 2d 215, 58 Ohio Op. 2d 424, 280 N.E.2d 896, paragraph two of the syllabus"). Notwithstanding attorney Cullimore's averment, the Court is not convinced that MKC Sheet 2.07 constitutes a mediation communication, as set forth in R.C. 2710.01. The Court concludes that MKC Sheet 2.07 should not be stricken.

{¶11} Additionally, the Court determines that a striking of Colaianni's entire response is not warranted as Colaianni's attachments to its response include a copy of the parties' contract with Wodesky's affidavit certifying that the copy of the contract is true and accurate. And insofar as the evidence proffered by Colaianni with its response in opposition is offered to rebut OSFC's contention of undue delay—an argument raised by OSFC's assertion of the doctrine of laches in OSFC's filing of March 16, 2017—such evidence is permitted by Evid.R. 408, which provides:

> a. Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose, such as* proving bias or prejudice of a witness, *negativing*

*a contention of undue delay*, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added.) Upon review, the Court determines that OSFC's "Motion To Strike Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment" of April 20, 2017 should be denied.

## IV. Because OSFC has not sustained its burden on summary judgment, OSFC's motion for summary judgment filed on March 16, 2017 should be denied.

### A. First Amended Complaint

{¶12} In its First Amended Complaint, Colaianni asserts that its lawsuit "is an action to recover money damages for breach of a construction contract arising from or relating to Colaianni's work as the combination general trades contractor on a project known as the New Middle School Project (the 'Project')." (First Amended Complaint, ¶ 1.) Colaianni contends that OSFC is a "co-owner" of the project with the Indian Creek Local School District, and that OSFC and the school district approved a contract with Colaianni. (First Amended Complaint, ¶ 6, 7.) Colaianni alleges:

- The school district hired MKC Associates, Inc. (MKC) as the architect for the project.

- OSFC and the school district, through MKC, were responsible for furnishing plans and specifications that were necessary for Colaianni to complete its work.

- MKC, acting as OSFC's agent, was responsible for processing and responding to shop drawings, submittals, and requests for interpretation (RFIs).

- Colaianni's work started about 8 months late through no fault of it or other contractors and its work was continually delayed and disrupted by a variety factors outside of Colaianni's control.

- Colaianni completed the project in December 2012 such that students were able to use the school building for the spring semester.

- In June 2013 Colaianni, through a subcontractor, Shelly & Sands, returned to the project to repair punch-list items and address concerns. According to Colaianni, paving repairs were effectuated without any objection of the architect or construction manager who supervised the activities.

- OSFC and the school district complained about water on the pavement of the asphalt parking lot and they hired Mannik Smith to investigate.

- Mannik Smith issued a report on June 27, 2014. Borings taken by Mannik Smith showed some deviations in paving thickness but, according to Colaianni, "the average actual total paving system (stone and asphalt) for the parking lot is within 99.62% and the total paving design thickness." (First Amended Complaint, ¶ 18.) And according to Colaianni, assuming that a certain boring is disallowed because it was compromised by a broken waterline during drilling, the average actual thickness "of the roadway" exceeds the design thickness by .20 inches. (First Amended Complaint, ¶ 18.)

- Shelly & Sands confirmed that compaction and density were fully achieved and that it provided documentation to that effect, as verified by a third-party testing agency.

- Colaianni has maintained that subsurface water continues to degrade the subgrade and migrate to the surface of the parking lot. Colaianni states that it "concurs with the Mannik Smith report with respect to its conclusions that the design of the asphalt paving system failed to adequately address the presence of subsurface water that the geotech report said should have been mitigated with underdrains and a geotech fabric." (First Amended Complaint, ¶ 20.)

- On November 5, 2015, the "Co-Owners" informed Colaianni through a letter that they would not pay Colaianni "its Contract Balance and thereby breached the Contract." (First Amended Complaint, ¶ 22.) Colaianni alleges that its claim for its contract balance "arose no earlier than November 5, 2015 when the Co-

Owners informed Colaianni that it [sic] would be 'retaining another contractor to correct the defective and non-conforming work.'" (First Amended Complaint, ¶ 24.)

- Colaianni has complied with all provisions of the contract and the "Co-Owners" have failed to comply with Articles 5 and 9 of the General Conditions of the contract and the "Co-owners" have no reason to withhold the remaining contract balance of $267,627.55.

- Dispute resolutions pertaining to claims under Article 8 of the contract do not apply and OSFC and the school district "have refused to pay the Contract Balance or arbitrate the dispute leaving Colaianni no choice but to initiate this action." (First Amended Complaint, ¶ 28.)

- Colaianni "attempted to arbitrate its dispute over [an] escrow agreement with Indian Creek and the Courts ultimately ruled that this dispute would have to proceed in the Ohio Court of Claims." (First Amended Complaint, ¶ 8.)

{¶13} Colaianni presents two causes of action labeled as counts: (1) "Count One- Breach of Contract" and (2) "Count Two – Declaratory Judgment." As to its breach-of-contract claim, Colaianni asserts that it and OSFC, through the school district, entered into a contract for construction services related to the project; that Colaianni performed its obligations under the contract and "satisfied all conditions precedent to recovery" (First Amended Complaint, ¶ 31); that OSFC and the school district breached the contract on November 5, 2015 by refusing to pay Colaianni a remaining contract balance of $267,627.55; and that Colaianni is entitled to recover from OSFC and the school district "its unpaid Contract Balance, interest accrued, and other damages in an amount not fully ascertained but which at trial will be proven to be well in excess of $25,000.00." (First Amended Complaint, ¶ 30-33.) As to its declaratory-judgment claim, Colaianni "contends that any and all alleged problems with the parking lot were the proximate result of the design of the asphalt paving system which failed to adequately

address the presence of subsurface water."  (First Amended Complaint, ¶ 37.) Colaianni seeks a declaratory judgment "to determine and to declare the parties' respective rights, status and other legal relations under the Contract and Contract Documents, including but not limited to whether Colaianni has any responsibility to perform or pay for additional work on the parking lot."  (First Amended Complaint, ¶ 38.) Colaianni also seeks a declaration that "the problems with the parking lot were proximately caused by a design error of the OSFC's agent, and not by any defective work by Colaianni and/or its subcontractor; and further that Colaianni is not responsible for any additional work on the parking lot as proposed by the OSFC."  (First Amended Complaint, ¶ 39.)

## B. OSFC's Motions and Colaianni's Response

{¶14} On March 16, 2017, OSFC moved pursuant to Civ.R. 12(B)(6) for an order dismissing Colaianni's First Amended Complaint for failure to state a claim upon which relief may be granted and it moved in the alternative for an order granting summary judgment in its favor.  With its filing OSFC appended a memorandum and attachments:

(1) a copy of an affidavit of Desmond J. Cullimore, Esq. dated February 14, 2017 wherein Cullimore avers that:

- he is an attorney with the law firm of Bricker & Eckler, LLP;

- he is legal counsel to the Indian Creek Local School District;

- he has personal knowledge of the matters stated in the affidavit; and

- on November 18, 2013, on behalf of the school district, he executed and sent via email and certified mail a letter to Colaianni titled "Indian Creek Local School District, New Middle School Project, Disapproval of Application for Payment No. 18, and Payments Withhheld for Defective/Non-Conforming Work, attached hereto as Exhibit 1," and

(2) a copy of the letter referenced in Cullimore's affidavit (Exhibit 1).

In its memorandum OSFC contends that (1) all of Colaianni's breach-of-contract claims are time barred; (2) Colaianni's declaratory-relief claim accrued more than four years before Colaianni filed suit and is time barred; (3) OSFC is entitled to judgment in its favor as a matter of law; (4) Colaianni's failure to initiate or complete the contractual dispute resolution process divests this Court of jurisdiction; (5) Colaianni has not stated an appropriate claim for declaratory relief and has not joined the parties statutorily required for this Court to even consider such relief; and (6) Colaianni's claims are barred by the doctrine of laches.

{¶15} On April 6, 2017, Colaianni filed a response in opposition with attendant exhibits.  With its response Colaianni attached a copy of an affidavit of David Wodesky dated April 5, 2017, wherein Wodesky attests that he is "Project Manager for Colaianni Construction, Inc. * * * and [he has] personal knowledge of the facts and circumstances described in this Affidavit."  In this affidavit, Wodesky avers that:

- A contract (Exhibit A-1), attached to Wodesky's affidavit is a true and accurate copy of Colaianni's contract with OSFC and the contract incorporates other documents including the project's General Conditions (GC) and Definitions;

- A copy of the project's General Conditions  (Exhibit A-2) attached to Wodesky's affidavit is true and accurate;

- A copy of the contract's definitions attached to Wodesky's affidavit (Exhibit A-3) is true and accurate;

- A "Parking Lot Report" (excluding attachments) appended to Wodesky's affidavit (Exhibit A-4) is a true and accurate copy and "was released to Colaianni on July 11, 2014";

- On October 2, 2015, Colaianni "submitted change order pricing under Article 7 for the additional cost to add underdrainage." A copy of an October 2, 2015 letter and change order request (Exhibit A-5) attached to the affidavit are true and accurate; and

- A copy of a November 5, 2015 letter from the school district's superintendent to Colaianni appended to Wodesky's affidavit is true and accurate.

In its response, Colaianni contends that OSFC has not carried its burden to prove that there is no dispute that Colaianni's claim for its contract balance accrued beyond the two-year statute of limitations contained in R.C. 2743.16(A). Colaianni further contends that OSFC has not provided a reason for this Court to depart from its recent findings that "the Article 8 process" does not apply to a contractor's claim for a contract balance based on the plain language of Article 8.

## C. Analysis

{¶16} OSFC's filing is comprised of two motions: (1) a Civ.R. 12(B)(6) motion and (2) an alternative motion for summary judgment; the motions raise an affirmative defense, namely, that Colaianni's lawsuit is time-barred. *See* Civ.R. 8(C) (indicating that a defense of "statute of limitations" is an affirmative defense). In view of OSFC's filing that combines a Civ.R. 12(B)(6) motion and a summary judgment motion, the Court finds that *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 11AP-183, 2012-Ohio-1962 is apt and offers guidance about how to proceed. In *Savoy* at ¶ 5-6, the Tenth District Court of Appeals stated:

> b. In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to the relief sought. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). When addressing such motion, the court must take the allegations in the complaint as true and draw any reasonable inferences in favor of the nonmoving party. *Id.* * * *.
>
> c. "A complaint may be dismissed under Civ.R. 12(B)(6) for failing to comply with the applicable statute of limitations when the complaint on its face *conclusively* indicates that the action is time-barred." (Emphasis added.) *Ohio Bur. of Workers' Comp. v. McKinley*, 103

> Ohio St.3d 156, 2011-Ohio-4432, ¶ 13, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 11, 849 N.E.2d 268. This holding, however, must be read in conjunction with the general rule that an "affirmative defense is generally not properly raised in a Civ.R. 12(B)(6) motion, as it also typically requires reference to materials outside the complaint." *Jude v. Franklin Cty.*, 10th Dist. No. 03AP-1053, 2004-Ohio-2528, ¶ 11, citing *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 2000-Ohio-2593, 743 N.E.2d 484 (7th Dist.2000). The various tolling exceptions to Ohio's statutes of limitation, including the refiling provisions of the savings statute, will often invoke questions of fact that may go beyond the scope of the bare dates set forth in the complaint. Because of this, the question of whether a complaint, on its face, "conclusively" fails as time-barred often requires more than mere reference to the overlong interval between the injury and commencement of the action. "For there to be a conclusive showing in that regard, the complaint must show both: (1) the relevant statute of limitations; and (2) the absence of factors which would toll the statute or make it inapplicable." *Id.*

*Savoy* further states: "Under these conditions, a better procedure is to address affirmative defenses by way of a motion for summary judgment that will allow introduction of additional facts beyond the complaint." *Savoy* at ¶ 7.

{¶17} Applying the reasoning of *Savoy*, the Court determines that in this circumstance the "better procedure" is to construe OSFC's "Motion To Dismiss Plaintiff's First Amended Complaint Or In The Alternative Motion For Summary Judgment" as a motion for summary judgment.

{¶18} Civ.R. 56(C) pertains to motions and proceedings for summary judgment. In *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997), construing Civ.R. 56(C), the Ohio Supreme Court stated: "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most

strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274." And in *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996) the Ohio Supreme Court held that

> d. a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

(Emphasis sic.) Here, OSFC's motion for summary judgment and Colaianni's response raise issues concerning (1) whether this court has jurisdiction of this cause and (2) whether any genuine issue of material fact remains to be litigated as to whether Colaianni's action is time-barred, with this Court viewing the evidence most strongly in favor of Colaianni, as the nonmoving party.

{¶19} For purposes of its motions of March 16, 2017, OSFC appears to concede that it is a state institution and it is a proper party before the Court. *See generally* R.C. 3318.30(A) ("There is hereby created the Ohio school facilities commission as an independent agency of the state within the Ohio facilities construction commission, which is created under section 123.20 of the Revised Code"); R.C. 2743.01(A) (defining

the term state to mean "the state of Ohio, including, but not limited to * * * agencies, and other instrumentalities of the state"); R.C. 2743.02(A)(1) (waiver of the state's immunity from liability and the state's consent to be sued and have its liability determined in the Ohio Court of Claims in accordance with the same rules applicable to suits between private parties subject to some limitations).

{¶20} Despite OSFC's contention that Colaianni's failure to initiate or complete the contractual dispute resolution process divests this Court of jurisdiction, this Court has, as a matter of law, exclusive, original jurisdiction in this cause in accordance with R.C. 2743.01(A)(1), which provides:

> e. There is hereby created a court of claims. The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims. The court shall have full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims.

Moreover, any potential claim of a lack of personal jurisdiction by OSFC is of little moment because, in this instance, OSFC has waived the issue of personal jurisdiction by its appearance and submissions. *See Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984) ("It is rudimentary that in order to render a valid personal judgment, a Court must have personal jurisdiction over the defendant. This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the Court. The latter may more accurately be referred to as a waiver of certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure"). Notably, the Ohio Supreme Court has determined: "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, '* * * the

right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.'" *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854).

{¶21} Additionally, General Conditions (GC) Article 1.1.3.2 of the parties' contract states: "The Ohio Court of Claims shall be the exclusive jurisdiction for any action or proceeding by the Contractor or the Contractor's Surety for any money damages concerning any agreement or performance under the Contract Documents or in connection with the Project." Thus, the parties' contract supports a view that jurisdiction in this forum is proper.

{¶22} Upon review, the Court finds that it has jurisdiction over both the subject matter at issue and the parties before it.

{¶23} Besides claiming that this Court lacks jurisdiction, OSFC urges that all of Colaianni's breach-of-contract claims are time barred, that Colaianni's claims are barred by the doctrine of laches, and that that Colaianni's declaratory-relief claim accrued more than four years before Colaianni filed suit and is time barred and that Colaianni has not joined parties statutorily required for this court to consider declaratory relief. As discussed below, the Court finds these arguments are not persuasive.

{¶24} According to R.C. 2743.16(A), subject to exceptions not relevant here, civil actions against the state permitted by R.C. 2743.01 to 2743.20 are required to "be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." *Compare* R.C. 2305.06 (statute of limitations for written contracts) ("Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within eight years after the cause of action accrued"). Therefore, applying R.C. 2743.16(A) to Colaianni's breach-of-contract claim against OSFC, its claim for a breach of contract "is subject to the R.C. 2743.16(A) two-year statute of limitations." *Marok v. Ohio State Univ.*, 10th Dist.

Franklin No. 13AP-12, 2014-Ohio-1184, ¶ 19, citing *Bell v. Ohio State Bd. of Trustees*, 10th Dist. Franklin No. 06AP-1174, 2007-Ohio-2790, ¶ 19.

{¶25} In *Columbus Green Bldg. Forum v. State*, 2012-Ohio-4244, 980 N.E.2d 1, ¶ 27 (10th Dist.), quoting *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 69 Ohio St. 2d 523, 526, 433 N.E.2d 187 (1982), the Tenth District Court of Appeals discussed the concept of an accrual of a cause of action, explaining:  "A cause of action does not ordinarily accrue until actual damage occurs; 'when one's conduct becomes presently injurious, the statute of limitations begins to run.'"  The appellate court, however, further explained:

> f.  With specific reference to contract claims, the Supreme Court of Ohio has held that "'[a] cause of action for breach of contract does not accrue until the complaining party suffers actual damages as a result of the alleged breach.'" *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 13, quoting *Midwest Specialities, Inc. v. Firestone Tire & Rubber Co.*, 42 Ohio App.3d 6 (9th Dist.1988). Although the complaining party may suffer actual damage at the time of the breach, that is not always the case. *See Bell* at ¶ 27 ("A cause of action for breach of contract accrues when the breach occurs *or* when the complaining party suffers actual damages."). (Emphasis added.)

*Columbus Green Bldg. Forum* at ¶ 27.

{¶26} OSFC contends that all of Colaianni's breach-of-contract claims are time barred because activities asserted in paragraph 14 of Colaianni's complaint (listing alleged factors that delayed and disrupted Colaianni's work on the project) "would have arisen during the construction process such that the latest time any claim related thereto could have accrued would be at the construction was complete" and, as a consequence, "any claim arising from the allegations in paragraph 14 must have accrued in or prior to December 2012." (OSFC Motion, 3.)  And with respect to Colaianni's allegation that its subcontractor repaired punch-list items in June 2013, OSFC asserts: "Even assuming that the two-year period for initiating litigation began to

run in June 2013, Colaianni initiated litigation over 3 and half years after doing the limited remedial work.  Thus, there are no provable facts that Colaianni's claims are not barred by the statute of limitations."  OSFC states: "The question of when Colaianni's contract balance claim accrued is simple – when was it owed the money? Colaianni alleged it was owed the money since December of 2012 because it completed construction and fulfilled all necessary contract requirements entitling it to payment. Colaianni also alleged its work was defect free as of June 2013. In order for Colaianni's allegation that the owners' decision to hire someone else to fix Colaianni's defective and non-conforming work actually marks the accrual of Colaianni's contract balance claim, * * * Colaianni's refusal to actually correct the defective and non-conforming work would have to somehow toll the applicable stature of limitations."  (OSFC Motion, 4.)  In support, OSFC relies on Exhibit 1 (letter dated November 18, 2013 from the school district's counsel, attorney Desmond Cullimore, to Vince Colaianni, president of Colaianni Construction, Inc.), which OSFC appended to its filing of March 16, 2017.

{¶27} In opposition, Colaianni asserts that the first time it became aware that OSFC and the school district rejected its proposed remedy to address the Mannik Smith's Parking Lot Report occurred when the school district's superintendent, T.C. Chappelear, issued a letter on November 5, 2015 (Exhibit A-6) in response to a letter of Colaianni dated October 2, 2015 wherein Colaianni sought direction whether the school district and OSFC intended to proceed with modifications to the parking lot that were discussed and identified in MKC Sheet 2.07 of June 2015.  According to Colaianni, it was not until Chappelear's letter of November 5, 2015 that Colaianni became aware that its attempt to remedy the situation initiated by MKC's revised parking lot design was not acceptable.

{¶28} In OSFC's Exhibit 1 (letter dated November 18, 2013), attorney Cullimore informed Vince Colaianni that "on October 29, 2013, and in accordance with GC 5.3, Bowen [Construction Manager] informed CCI [Colaianni Construction, Inc.] that the Owners are proceeding to supplement CCI's work with another contractor and that all

costs to correct this defective work will be deducted from CCI's contract." Cullimore stated: "As a result of CCI's * * * failure to construct the parking lot in accordance with the Contract Documents, the District is declining to approve Application for Payment No. 18 and is withholding further payment from CCI to correct defective and/or non-conforming work. Once the investigation is complete, we will provide CCI with the results of the investigation. In addition, to the extent the defective parking lot was not the subject of the prior notice of defective work, CCI will be provided the opportunity to correct the defective parking lot in accordance with the Contract Documents." Viewing this evidence in favor of Colaianni, as required by Civ.R. 56(C), the Court determines that a trier-of-fact could conclude that as of November 2013 Colaianni was on notice that its work pertaining to the parking lot was defective, that its work would be supplemented by another contractor, and that Colaianni would be given an opportunity to cure its purportedly defective work after an investigation was completed.

{¶29} By comparison, in Colaianni's Exhibit A-6 (letter dated November 5, 2015) Superintendent Chappelear informed Colaianni that "in accordance with the Co-Owners right under GC 5.3 [right to prosecute work and backcharge contractor], the Co-Owners will be retaining another contractor to correct the defective and non-conforming work of Colaianni." Chappelear also stated: "The estimated costs to correct the defective work of Colaianni exceed the unpaid balance of the Contract Sum, which Colaianni indicates is $267,627.55. * * * As a result of [Colaianni's] failure to perform its work in accordance with the Contract Documents, the Co-Owners will continue to withhold payment from [Colaianni] to correct defective and/or non-conforming work." Chappelear further stated: "As a contractual dispute, Colaianni is required to follow the dispute resolution procedures in Article 8 of the General Conditions of the Contract." Chappelear continued: "If Colaianni seeks to compel arbitration, the Co-Owners will oppose such action * * *." Viewing this evidence in favor of Colaianni, as required by Civ.R. 56(C), the Court determines that a trier-of-fact could conclude that (1) as of November 2015 Colaianni was on notice that OSFC would be withholding $267,627.55 because, in

OSFC and the school district's view, Colaianni failed to perform in accordance with the parties' contract; (2) the school district planned to retain another contractor due to Colaianni's purportedly defective work; and (3) OSFC and the school district opposed arbitration.

{¶30} After considering the evidence, including Exhibit 1 and Exhibit A-6 in favor of Colaianni, as required by Civ.R. 56(C), the Court determines that a trier-of-fact could conclude that a genuine issue of material fact exists whether Colaianni's breach-of-contract claim accrued at the latest in June 2013—as OSFC urges—or no earlier than November 5, 2015—as Colaianni contends.

{¶31} Besides urging that Colaianni's claims are statutorily time-barred, OSFC contends that Colaianni's claims are barred by the doctrine of laches because, according to OSFC, Colaianni has unreasonably delayed bringing its action and it has alleged no excuse for the delay. Colaianni disputes that it delayed in bringing its lawsuit. In opposition, Colaianni represents that, after it received the "Co-owner's" response of November 5, 2015, it filed a complaint in the Jefferson County Common Pleas Court on December 10, 2015, seeking arbitration and the appointment of an arbitrator for the purpose of obtaining retainage funds that were held in an escrow account. Colaianni maintains that, after the common pleas court issued an order on March 3, 2016 that compelled the school district to arbitrate, the school district appealed. According to Colaianni, the appellate court reversed the common pleas court, determining that the retainage funds were not subject to arbitration because the responsible party was OSFC—not the school district.

{¶32} In *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995), the Ohio Supreme Court discussed the elements that are required to be established for the equitable doctrine of laches to apply, stating: "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Meyers v. Columbus*

(1995), 71 Ohio St. 3d 603, 605, 646 N.E.2d 173, 174." At least one Ohio appellate court has suggested whether the doctrine of laches applies is subject to a court's discretion. *See, e.g.*, *State ex rel. Allied Sys. Holdings v. Donders*, 10th Dist. Franklin No. 11AP-960, 2012-Ohio-5855, ¶ 14 ("this court has consistently applied an abuse-of-discretion standard in laches cases, including at least one case involving the Industrial Commission"). But another Ohio appellate court has suggested whether the doctrine of laches applies presents a question of law. *See State ex rel. Doran v. Preble Cty. Bd. of Commrs.,* 2013-Ohio-3579, 995 N.E.2d 239, ¶ 15 (12th Dist.) ("The issue is whether Ohio law permits the equitable application of the doctrine of laches to claims regarding the rights of taxpayers. As this is a question of law, we review appellants' contention under a de novo standard of review"). Notably, the Ohio Supreme Court has stated: "Whether the four elements of laches are applicable is ultimately a factual determination." *Hara v. Montgomery Cty. Joint Vocational Sch. Dist.*, 75 Ohio St.3d 60, 64, 661 N.E.2d 711 (1996).

{¶33} Here, in a related case decided on December 12, 2016—*Colaianni Constr. v. Indian Creek Local School Dist.*, 7th Dist. Jefferson No. 16 JE 0009, 2016-Ohio-8156—the Seventh District Court of Appeals determined that claims pertaining to the present case should be brought in this Court, stating: "As the public owner is the State of Ohio, the remedy is not arbitration under R.C. 153.63(B). To the contrary, R.C. 153.63(C) directs the contractor to file an action in the court of claims. Accordingly, the trial court should have dismissed the case for lack of jurisdiction instead of compelling arbitration." *Colaianni Construction*, ¶ 1. On January 19, 2017—about five weeks after the Seventh District Court of Appeals issued *Colaianni Construction*—Colaianni filed its original complaint in this Court. Viewing the evidence (i.e., Colaianni's pleadings, affidavits filed by the parties, and documents authenticated by affidavit) in favor of Colaianni, as required by Civ.R. 56(C), the Court finds that under these circumstances reasonable minds can come to but one conclusion—namely, that Colaianni's delay in filing its original complaint in this Court after the appellate court

issued *Colaianni Construction*— does not present a genuine issue of material fact whether Colaianni unreasonably delayed in asserting its rights in this Court.

**{¶34}** The Court's finding is supported by the parties' contract. The parties' contract contains an alternative-dispute-resolution provision, G.C. 8.10, and the term alternative dispute resolution, as used in the contract, may be construed to include arbitration. See Definitions (defining alternative dispute resolution in the contract as a "voluntary and non-binding process for the administrative review, consideration, and attempted settlement of a dispute, without resort to judicial process including, without limitation, partnering, negotiation, mediation, and impartial fact-finding, but not binding arbitration or litigation"). Thus, a contractual basis existed for Colaianni's decision to seek the appointment of an arbitrator. And until the appellate court rendered its decision in December 2016, whether the common pleas court had jurisdiction to compel arbitration had not been adjudicated by an appellate court of competent jurisdiction.

**{¶35}** Moreover, because traditionally the equitable defense of laches has been unavailable in actions at law brought within an applicable statute of limitations, *see Cornetta v. United States*, 851 F.2d 1372, 1376 (Fed.Cir.1988); *Baltimore Trust Co. v. Norton Coal Mining Co.*, 25 F.Supp. 968, 971 (W.D.Ky.1939), and because, as discussed above, whether Colaianni's claims are time-barred presents a genuine issue of material fact, the Court determines that Colaianni's claims should not be barred by the equitable doctrine of laches in this instance.

**{¶36}** Finally, the Court considers OSFC's contentions that Colaianni has not stated an appropriate claim for declaratory relief; that Colaianni has not joined parties statutorily required for this Court to consider such relief; and that Colaianni's declaratory-judgment claim is time-barred.

**{¶37}** In Colaianni's First Amended Complaint, Colaianni asserts that a declaratory judgment "is required * * * to declare the parties' respective rights, status and other legal relations under the Contract and Contract Documents, including but not limited to whether Colaianni has any responsibility to perform or pay for additional work

on the parking lot." (First Amended Complaint, ¶ 38.) Colaianni also asserts that it "seeks declaratory judgment that the problems with the parking lot were proximately caused by a design error of the OSFC's agent, and not by any defective work by Colaianni and/or its subcontractor, and further that Colaianni is not responsible for any additional work on the parking lot as proposed by OSFC." (First Amended Complaint, ¶ 39.)

{¶38} A declaratory judgment is defined as a "binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Black's Law Dictionary* 971 (10th Ed.2014). To the extent that in Colaianni's First Amended Complaint Colaianni seeks a declaration about the rights and legal relations of itself and OSFC under the parties' contract, the Court determines that Colaianni has asserted a proper declaratory-judgment claim. But to the extent that in its declaratory-judgment claim Colaianni seeks a determination about the proximate cause for problems with the project's parking lot or an order of enforcement pertaining to Colaianni's breach-of-contract claim, the Court concludes that Colaianni's declaratory-judgment claim is not a proper declaratory-judgment claim.

{¶39} R.C. 2743.03(A)(2) grants authority to this Court to consider a claim for a declaratory judgment in certain circumstances. According to R.C. 2743.03(A)(2), if the claimant in a civil action as described in R.C. 2743.03(A)(1) "also files a claim for a declaratory judgment * * * against the state that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of this section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action." Thus, to the extent that Colaianni has asserted a proper declaratory-judgment claim against OSFC that arises out of the same circumstances that gives rise to Colaianni's breach-of-contract claim against OSFC, the Court finds that Colaianni's declaratory-judgment claim is properly before the Court in accordance with R.C. 2743.03 (A)(2). As to OSFC's suggestion that other parties, namely, the project's architect, the school district, and Colaianni's subcontractor, are potentially affected by

this Court's determination of Colaianni's declaratory-judgment claim and therefore should be made parties to this case pursuant to R.C. 2721.12, the Court finds OSFC's argument is unpersuasive. In the Court's view, the relevant statute governing Colaianni's declaratory-judgment claim is R.C. 2743.03(A)(2)—not R.C. 2721.12. Moreover, because, as a matter of law, only the state may be a defendant in original actions before this Court, see *Rooney v. Ohio State Highway Patrol*, 10th Dist. Franklin No. 16AP-204, 2017-Ohio-1123, ¶ 5, Colaianni is, as a matter of law, precluded from bringing a declaratory-judgment claim in this Court against the project's architect, school district, and Colaianni's subcontractor.

{¶40} Also, in the Court's view, the declaratory-judgment claim, as pleaded by Colaianni, effectively is a breach-of-contract claim. *See Ambulatory Care Affiliates, Ltd. v. OhioHealth Corp.*, 10th Dist. Franklin No. 10AP-30, 2010-Ohio-3035, ¶ 10 (actions for declaratory judgment are special proceedings but when a declaratory judgment claim is asserted within the context of an ordinary civil action for breach of contract, the underlying action governs an appellate court's analysis). Because, as discussed above, the Court has determined that a trier-of-fact could conclude that a genuine issue of material fact exists as to whether Colaianni's breach-of-contract claim is time-barred, it follows that a genuine issue of material fact exists as to whether Colaianni's proper declaratory-judgment claim, which arises from the same circumstances as the breach-of-contract claim, is time-barred.

## V. Conclusion

{¶41} Accordingly, for reasons set forth above, the Referee recommends that OSFC's motion to dismiss and alternative motion of February 16, 2017 should be denied, that OSFC's motion to dismiss and OSFC's alternative motion of March 16, 2017 should be construed as a motion for summary judgment and should be denied, and that OSFC's motion to strike filed on April 20, 2017 should be denied.

{¶42} *Pursuant to R.C. 2743.03(C), proceedings governing referees "shall be in accordance with Civil Rule 53, except as modified by this division." According to Civ.R. 53(D)(3)(b)(i), a party may file written objections to a magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
DALE A. CRAWFORD
Referee

cc:

Donald W. Gregory            David A. Beals
Michael J. Madigan           James E. Rook
Timothy A. Kelley            Assistant Attorneys General
Capitol Square Office Building   150 East Gay Street, 18th Floor
65 East State Street, Suite 1800   Columbus, Ohio 43215-3130
Columbus, Ohio 43215-4294

**Filed July 7, 2017**
**Sent to S.C. Reporter 8/9/17**