[Cite as *White v. Cleveland*, 2025-Ohio-739.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| DALONTE WHITE, | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 112408, 112413, and |
| v. | : | 112415 |
| CITY OF CLEVELAND, ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 6, 2025

Civil Appeal from the Court of Common Pleas
General Division
Case No. CV-17-880097

### *Appearances:*

The Chandra Law Firm, LLC, Subodh Chandra, and
Donald P. Screen, *for appellee.*

Mark D. Griffin, Cleveland Director of Law, Elena N.
Boop, Chief Trial Counsel, James R. Russell, Jr., Chief
Assistant Director of Law, and Affan Ali, Assistant
Director of Law, *for appellants* Robert Beveridge, John
Kubas, David Santiago, Sr., Michael Schade, and Thomas
Shoulders.

Wilkerson & Associates Co., LPA, Ernest L. Wilkerson, Jr.,
and Kathryn M. Miley, *for appellant* David Lam.

ANITA LASTER MAYS, J.:

**{¶ 1}** This consolidated appeal arises from 42 U.S.C. 1983 federal and state claims filed by plaintiff-appellee Dalonte White ("White") against defendants-appellants: (1) the City of Cleveland ("City"); (2) members of the Cleveland Police Department, Officer Michael Schade ("Ofc. Schade"), Sergeant Thomas Shoulders ("Sgt. Shoulders"), and detectives Robert Beveridge, ("Det. Beveridge"), John Kubas ("Det. Kubas"), and David Santiago ("Det. Santiago") (collectively the "Officers"), and (3) Detective David Lam ("Det. Lam"). White's claims concern his arrest for a home invasion involving a shooting, robbery, and assault. Although the juvenile court found no probable cause to bind White over to adult court, he remained incarcerated for 20 months after his arrest.

**{¶ 2}** White initiated this action in the Cuyahoga County Court of Common Pleas. The case was removed to the United States District Court for the Northern District of Ohio. The federal court granted summary judgment for defendants on White's federal claims but declined to exercise supplemental jurisdiction over the remaining state-law claims, remanding them to the state trial court. On remand, the trial court denied appellants' motions for summary judgment, citing disputed issues of material fact.

**{¶ 3}** The City now appeals the trial court's refusal to grant summary judgment on its claim of sovereign immunity under R.C. 2744.02. The Officers and Det. Lam separately appeal the trial court's denial of immunity under R.C. 2744.03(A)(6)(b) and (A)(6)(c) and contend that the doctrine of collateral estoppel

precludes relitigating or reconsideration of factual or legal issues determined by the district court. Det. Lam also assigned error to the trial court's denial of a stay under the Servicemembers Civil Relief Act, 50 U.S.C. 3932 ("Relief Act"), but now concedes that the issue is moot.

{¶ 4} For the reasons that follow, in this split decision, Part I, delivered by Judge Anita Laster Mays, and joined by Judges Mary J. Boyle and Sean C. Gallagher, reverses the trial court's decision on assignment of error one refusing to grant summary judgment to the City of Cleveland on the issue of immunity. Further, we sustain the City's second assignment of error. Neither the trial court nor this court has jurisdiction to review a federal court's decision.

{¶ 5} Part II, delivered by Judge Sean C. Gallagher, and joined by Judge Mary J. Boyle, reverses the trial court's judgment on the issue of collateral estoppel as to all officers individually. Judge Anita Laster Mays dissents with a separate opinion on the issue of collateral estoppel as to all officers individually. This matter is remanded to the trial court for further proceedings consistent with this opinion.

<u>**Part I**</u>

**Background and Facts**

{¶ 6} White alleges that he was arrested and detained based solely on flawed eyewitness identifications, a lack of evidence, false police reports, alleged witness tampering, and other intentional violations of his civil rights. For efficiency, both the trial court and the federal court incorporated the factual background from

*White v. Cleveland*, N.D. Ohio No. 1:17-CV-01165, 2020 U.S. Dist. LEXIS 241429 (Dec. 23, 2020) ("*White I*").

**The Incident**

{¶ 7}   On April 21, 2015, three males entered the home of victim C.A. The assailants also robbed two of C.A.'s teenage relatives ("S.L." and "Z.H."). One assailant ("the shooter") pistol whipped and shot C.A. in the shoulder; a dog belonging to C.A. was also shot.  The victims believed that the shooter shot himself in the leg or foot when one of the dogs bit him.  Police issued alerts to local hospitals.

{¶ 8}   Initial reports indicated that neither teen witness got a good look at the shooter's face.  However, the victims described the shooter as a tall, heavy-set individual with braided hair.  The federal court's decision noted that a responding officer's report initially described the shooter as having braided hair, being at least six feet tall, and weighing 250 pounds. Because the officer interviewed multiple people at the scene, the source of the description was unclear.  White maintains that the evidence shows the teenagers provided that description.

{¶ 9}   Once additional officers arrived, they canvassed the neighborhood and obtained surveillance footage from a neighbor's home.  The video showed an individual limping with dreadlocks or braids, wearing a dark North Face jacket, dark pants, and white shoes, tucking a firearm into his waistband.  Consistent with the teen victims' statements and the video, police asked dispatch to watch hospitals for anyone reporting with a leg or foot injury from a dog bite or gunshot.

{¶ 10} While at the scene, Det. Lam learned from Ofc. Schade about a recent aggravated-menacing complaint in the same area that reportedly identified White and an associate, Rayvion Edwards ("Edwards"). However, the district court found that the related menacing report did not actually name White as a suspect.

**Investigation and Arrest**

{¶ 11} The next day, Det. Lam and Sgt. Shoulders conferred with Det. Beveridge, who was known for his knowledge of neighborhood gang activity. Beveridge relayed that White and two other young males were affiliated with the "Hungry Money Family" or "Heartless Money Family" ("HMF") — a group believed to be robbing people in that neighborhood. Based on that information, Lam prepared three juvenile photo arrays: one featuring White and the others featuring the other suspected HMF members. Because the juvenile photo database is small, the only available photo of White showed him wearing braids while the filler photos did not feature similar hairstyles.

{¶ 12} On April 23, 2015, the photo arrays were shown to the teen victims. S.L. identified White as the shooter with 100 percent certainty, and Z.H. identified White with 70 percent certainty. Neither teen identified anyone else in the other arrays. They later explained they identified White partly because of his braids.

{¶ 13} On April 24, 2015, C.A. reportedly described the shooter as approximately 5'5" and weighing 160 to 170 pounds — closer to White's height and weight (5'5", 135 pounds). C.A. identified White with 100 percent certainty. White maintains that C.A. never provided this description and that it was later inserted.

On the same day, officers visited White's home, photographed his legs, and found no signs of dog bites or gunshot wounds. Although the injuries were crucial to the suspect's description, Det. Lam and Sgt. Shoulders obtained a warrant for White's arrest that same day. In the arrest-warrant affidavit, Sgt. Shoulders cited information from Ofc. Schade's alleged statement that White was a suspect in the aggravated-menacing complaint, the surveillance video, and the teen victims' identifications of White with high certainty.

{¶ 14} Police searching White's home found a black North Face jacket. Meanwhile, additional interviews with White's associates (D.M. and Edwards) indicated White was a known HMF member, allegedly bitten by a dog about a week earlier, and that HMF members stored guns at one of their residences. Later, warrants for White's phones, Facebook records, and DNA yielded no additional evidence supporting the theory that White was the shooter. White claims a witness and social media posts placed him at home when the invasion occurred.

**Subsequent Developments**

{¶ 15} On May 1, 2015, police discovered that an individual named Edward Bunch ("Bunch") had arrived at Lakewood Hospital with a gunshot wound to the right leg within an hour of the home invasion. Bunch gave inconsistent explanations for the injury, including a claim that he was shot while riding a bicycle. Further investigation revealed that Bunch was a 19-year-old, 6'0", 213-pound Black male with a prior home-invasion arrest in which he allegedly used force and took items at gunpoint. Despite these similarities, White remained in custody.

**{¶ 16}** Detectives prepared new photo arrays for Bunch and another suspect. On May 13, 2015, C.A., S.L., and Z.H. were shown these new arrays. According to official records, Det. Kubas identified Bunch with 90 percent certainty. Also, C.A. testified during White's July 2015 bindover hearing that she recognized Bunch's photo as the shooter but was told not to mark him because White had already been arrested. S.L. gave a similar testimony, stating that the detective administering her photo array instructed her not to circle someone previously identified.

**{¶ 17}** Kubas and Santiago denied telling any witness not to identify someone already chosen. According to C.A.'s testimony, the revelation about Bunch's identification came to White's defense counsel in June 2015. During White's July 16, 2015 bindover hearing,

> C.A. and S.L. testified regarding their identifications of Bunch, as described above. This was the first time that the prosecutor assigned to the [C.A.] home invasion, Norman Schroth ("Schroth"), learned of the alleged "serious and exculpatory" improprieties in the administration of the photo arrays to [C.A.] and [S.L.]. The bindover hearing continued on July 21, 2015, and concluded on July 24, 2015. At the conclusion of the hearing, the judge held that there was no probable cause that White was part of the [C.A.] home invasion, noting that all three witnesses had identified Bunch, that White was the only one with dreadlocks or twists in the photo arrays in which he had been identified (while all of the individuals in Bunch's photo arrays had similar hairstyles), the conflicting descriptions of Suspect #1's height and weight, Bunch's injury the night of the home invasion, and the lack of evidence corroborating the initial identification of White, including the lack of marks on White's legs. Despite this finding, the judge did not dismiss the case against White nor release him from detention. Schroth indicated his belief that if there was no probable cause, the court had to dismiss the case. However, after a short recess, the judge stated that Ohio's Eighth District Court of Appeals has held that it is the state's case and it may dismiss the case if it wishes, but that she was not

comfortable dismissing the charges outright. As a result, the judge set the matter for trial, while noting the prosecution could dismiss the case.

*White v. Cleveland,* No. l:17-cv-116 J.E. at 13-14 (N.D. Ohio, Dec. 23, 2020).

**{¶ 18}**  Although the bindover hearing did not result in the dismissal of the charges, White was released on house arrest on July 31, 2015. He returned to detention for violating the release terms in September 2015. Ultimately, the home-invasion charges were dismissed without prejudice in December 2015, but White stayed in detention until December 1, 2016, for additional assault charges committed while in custody.

**{¶ 19}** White alleges that the "rigged" identifications and fabricated menacing allegation were the only bases for probable cause in the arrest-warrant affidavit.  Moreover, White claims that officers continued to detain him, pursue him, and falsified reports, despite the emergence of Bunch as a likely suspect.

**{¶ 20}** On May 9, 2017, White filed this civil suit in the Cuyahoga County Court of Common Pleas.  On April 17, 2020, White filed a second amended complaint ("SAC") against the City and the individual defendants in their personal and official capacities alleging the following claims:

Claim 1:  Fourth and Fourteenth Amendment malicious prosecution under 42 U.S.C. § 1983 against all defendants;

Claim 2: Fourth and Fourteenth Amendment false arrest/false imprisonment under 42 U.S.C. § 1983 against all defendants, except Kubas and Santiago;

Claim 3: Fourth and Fourteenth Amendment wrongful detention under 42 U.S.C. § 1983 against all defendants;

Claim 4: Fourteenth Amendment due process violation under 42 U.S.C. § 1983 against all defendants;

Claim 5: Fourth and Fourteenth Amendment failure to train under 42 U.S.C. § 1983 against the City;

Claim 6: malicious prosecution under Ohio law against all defendants [and against the individual defendants in their official and personal capacities];

Claim 7: false arrest under Ohio law against all defendants, except Kubas and Santiago [and against the individual defendants in their official and personal capacities];

Claim 8: false imprisonment under Ohio law against all defendants [and against the individual defendants in their official and personal capacities];

Claim 9: intimidation (using materially false or fraudulent writings to attempt to influence public servants) under R.C. 2921.03 [(A) and (C) (against all defendants, and against the individual defendants in their official and personal capacities]; and

Claim 10: civil liability for criminal acts under R.C. 2307.60[(A)(1) against all defendants, and against the individual defendants in their official and personal capacities].

*White*, No. l:17-cv-1165 J.E. at 16.

**{¶ 21}** Appellants removed the action to federal court and filed for summary judgment on May 4, 2020. White also filed a motion for partial summary judgment seeking summary judgment on the question of liability on Claims 9 and 10 against Kubas and Santiago in their personal and official capacities. *White v. City of Cleveland*, N.D. Ohio No. 1:17-CV-01165, 2020 U.S. Dist. LEXIS 241429, at *25-26 (Dec. 23, 2020).

{¶ 22} After the close of discovery, the federal district court granted summary judgment for defendants on White's federal claims under 42 U.S.C. 1983. However, the court specifically declined supplemental jurisdiction over the state claims (Claims 6-10), explaining that the state courts were better suited to decide them. The court also denied White's motion for partial summary judgment on his claims for intimidation (R.C. 2921.03) and civil liability for criminal acts (R.C. 2307.60), without considering the merits of the claims. The district court noted that it denied White's motion for partial summary judgment "without prejudice to any right White may have to refile his motion upon remand to state court." The court specified its reasoning for the denial of Claims 9 and 10 was because the court declined to exercise jurisdiction over White's state law claims, not based on the merits of the claims.

{¶ 23} In January 2021, the state court received the remanded matter. White moved for reconsideration of the federal court's decision, but the trial court denied White's motion, finding that it lacked authority to review the district court's ruling. In September 2022, the City, the Officers, and Det. Lam separately moved for summary judgment that the trial court denied. The City appealed on February 14, 2023 (Case No. 12408), the Officers appealed on February 14, 2023 (Case No. 112413), and Det. Lam appealed on February 15, 2023 (Case No. 12415). The cases were consolidated on appeal raising the following assignments of error.

**Assignments of Error**

1. The trial court erred by denying the City immunity under the Political Subdivision Tort Liability Act, R.C. 2744.02.

2. This court lacks jurisdiction to review the federal court's December 23, 2020, summary-judgment decision on White's federal claims.

3. The trial court erred by denying the Officers and Det. Lam immunity under R.C. 2744.03(A)(6)(b) on White's malicious prosecution, false arrest, and false imprisonment claims (Claims 6, 7, and 8).

4. The trial court erred by denying the Officers and Det. Lam immunity under R.C. 2744.03(A)(6)(c) on White's intimidation and civil-liability claims (Claims 9 and 10).

5. The trial court erred when it failed to grant a stay during Det. Lam's deployment, under the Servicemembers Civil Relief Act, 50 U.S.C. 3932. Lam concedes this assignment of error is moot.

## Jurisdiction

**{¶ 24}** Generally, an order denying a motion for summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 9. However, an order that denies a political subdivision the benefit of immunity is a final appealable order under R.C. 2744.02(C). *Id.* at ¶ 27. Upon review, the appellate court is limited to a review of the trial court's order that denied the benefit of political immunity. *Reinhold v. Univ. Hts.*, 2014-Ohio-1837, ¶ 21 (8th Dist.), citing *Riscatti v. Prime Properties Ltd. Partnership*, 2013-Ohio-4530, ¶ 20. Therefore, our review will be limited to a review of the orders that denied appellants the benefit of political immunity.

## Standard of Review

**{¶ 25}** Summary judgment rulings are reviewed de novo under Civ.R. 56(C). *Heba El Attar v. Marine Towers E. Condominium Owners' Assn.* 2023-

Ohio-2581, ¶ 10 (8th Dist.), citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate if the moving party demonstrates (1) there are no genuine issues of material fact, (2) it is entitled to judgment as a matter of law, and (3) reasonable minds, viewing the evidence most favorably to the nonmoving party, can reach only one conclusion adverse to that party. Civ.R. 56(C), *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶ 26} The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. If the moving party meets that burden, the nonmovant must respond with specific facts under Civ.R. 56(C) to show a genuine issue remains for trial. If the nonmovant fails to do so, summary judgment is warranted. *Dresher* at 294.

**Political Subdivision Tort Liability Act Immunity — City**

{¶ 27} In its first assignment of error, the City argues the trial court erred when it denied the City's motion for summary judgment. Appellants contend the City is entitled to immunity under the Political Subdivision Tort Liability Act, R.C. Ch. 2744. Additionally, the City claims White waived objections to its motion for summary judgment under the Political Subdivision Tort Liability Act because he failed to raise objections in the trial court.

{¶ 28} The Political Subdivision Tort Liability Act generally immunizes municipal corporations for governmental or proprietary functions, subject to limited statutory exceptions. R.C. 2744.02. When a lawsuit is filed against a political subdivision, the court applies a three-tier analysis to determine whether immunity

applies. *Cater v. Cleveland,* 83 Ohio St.3d 24, 28 (1998). Under R.C. 2744.02(A)(1), the initial presumption is that the political subdivision is immune from liability, but that presumption may be rebutted under the second-tier analysis, if one of the statutory exceptions in R.C. 2744.02(B) applies. Even if an exception applies, the third tier of the immunity analysis reinstates immunity if the subdivision proves it is entitled to one of the R.C. 2744.03 defenses. *Colbert v. Cleveland,* 2003-Ohio-3319, ¶ 9. The Political Subdivision Tort Liability Act (R.C. 2744.02) grants municipalities broad immunity for governmental functions, unless specific statutory exceptions apply. R.C. 2744.02(B) exceptions are for injury, death, or loss to person or property caused by:

1. Negligent operation of motor vehicles,

2. Negligent performance of proprietary functions,

3. Failure to maintain public roads,

4. Negligence in maintaining government buildings, or

5. Civil liability explicitly imposed by law.

**{¶ 29}** In the instant case, the City argues that none of the five statutory exceptions apply and that White failed to object to the City's claim of immunity under the Political Subdivision Tort Liability Act before the trial court. Since White's claims do not involve motor vehicles, public roads, or government buildings, R.C. 2744.02(B)(2) and (5) provide White's only possible options to defeat the City's immunity defense.

**{¶ 30}** R.C. 2744.02(B)(2) provides an exception to immunity based on negligent performance of proprietary functions. Here, White alleges that the City's liability lies with its supervision and training of officers. He also claims that the City's policies and procedures permit officers to obtain arrest warrants based on fraudulent affidavits and ignore exculpatory evidence. White's claims against the City concern police department operations, which are governmental functions. *E.g., Friga v. E. Cleveland*, 2007-Ohio-1716, ¶ 9 (8th Dist.). White argues that the City's actions were both negligent and intentional. Regardless, R.C. 2744.02(B)(2) is not applicable to negligent performance of governmental functions nor may it be used to preclude immunity for intentional torts. *E.g., M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 4 (R.C. 2744.02(A)(1) generally confers immunity from liability for injury caused by a political subdivision's acts and omissions "in connection with a governmental or proprietary function".) S*ee also Harris v. Sutton*, 2009-Ohio-4033, ¶ 15 (8th Dist.) (Ohio courts consistently have held that political subdivisions are immune from intentional tort claims). Therefore, absent an exception under R.C. 2744.02(B)(5), the City is entitled to immunity.

**{¶ 31}** R.C. 2744.02(B)(5) provides an exception to immunity for political subdivisions when civil liability is explicitly imposed by law for the municipality's actions. "Without direct or unmistakable terms imposing civil liability upon the city, R.C. 2744.02(B)(5) does not apply." *Swanson v. Cleveland*, 2008-Ohio-1254 ¶ 23 (8th Dist.). White offers no statute that explicitly imposes civil liability on the City. Accordingly, the City is entitled to statutory immunity on White's state-law claims.

{¶ 32} The trial court erred by denying the City's motion for summary judgment on those claims. We sustain the City's first assignment of error.

**Review of Federal Court's Order Granting Summary Judgment**

{¶ 33} The City asserts in its second assignment of error that this court lacks jurisdiction to review the federal court's December 23, 2020 summary judgment decision on White's federal claims. After remand, White filed a motion in the trial court asking for reconsideration of the federal court's order granting summary judgment in favor of appellants under 42 U.S.C. 1983. The trial court held that it lacked jurisdiction to do so. The federal court remanded only the state-law claims, and White failed to appeal the federal decision to the Sixth Circuit. It is undisputed that Ohio appellate courts cannot review decisions of federal courts. *Ford Motor Credit Co., L.L.C. v. Collins*, 2014-Ohio-5152, ¶ 17 (8th Dist.).

{¶ 34} White's avenue to challenge the federal court's dismissal of his federal claims was to appeal to the United States Sixth Circuit Court of Appeals, pursuant to the Federal Rules of Appellate Procedure and 28 U.S.C. 1291, or request reconsideration in federal, not state court. Furthermore, the trial court properly recognized that it lacked jurisdiction to review a final federal court judgment. More importantly, White contends he does not seek review of the federal district court's order. To that end, a review of the district court's finding of probable cause to initially arrest White is not properly before this court and will not be addressed.

{¶ 35} Appellant's second assignment of error is disregarded.

ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR

## Part II

SEAN C. GALLAGHER, J., MAJORITY OPINION:

{¶ 36} I fully concur with the lead opinion's conclusion as to the City of Cleveland's entitlement to statutory immunity. Notwithstanding, I respectfully disagree with the dissent's analysis concerning the trial court's decision denying the individual defendant police officers and detectives the benefits of immunity conferred under R.C. 2744.03(A)(6).

{¶ 37} The dissent imputes the conduct of the different political subdivision employees to each other, for example, concluding that the allegations against Kubas and Santiago are sufficient to warrant finding an exception to immunity as to the other officers. This conclusion directly conflicts with established authority that each officer is only potentially liable for their own acts or omissions, not those committed by others. *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, ¶ 75 (8th Dist.), citing *Estate of Graves v. City of Circleville*, 2008-Ohio-6052, ¶ 29-35 (4th Dist.). White must demonstrate that each individual employee's act or omission meets the R.C. 2744.03(A)(6)(b) standard in order to demonstrate that an exception to immunity exists for that individual employee. He cannot lump everyone together.

{¶ 38} In addition, the dissent concludes that we are bound by the findings of the federal court but then claims that for the purposes of the state claims of

malicious prosecution, false arrest and imprisonment, intimidation and civil liability for criminal acts, which largely focus on the probable-cause determination, there are issues of fact. However, the federal court unambiguously concluded that there was probable cause to arrest and detain White. As another panel from this district has concluded, because there was probable cause for the arrest and detention, White cannot demonstrate the exception to immunity under R.C. 2744.03(A)(6)(b). *Morrison* at ¶ 83.

{¶ 39} On this point, the dissent attempts to distinguish the federal court's probable-cause determination claiming that the federal court did not determine whether probable cause existed to continue White's prosecution after the bindover hearing. None of the officers' or detectives' alleged acts or omissions occurred after the bindover hearing, a fact of consequence to the state immunity claims and one expressly considered by the federal court. *White v. Cleveland*, 2020 U.S. Dist. LEXIS 241429, *69 (N.D.Ohio, Dec. 23, 2020) (concluding that none of the officers' or detectives' individual actions related to the continued detention and prosecution following the bindover hearing). Any decision to continue the prosecution following the bindover hearing solely rested with the prosecutor, who at that time was aware of the alleged conduct of the defendants.

{¶ 40} White has presented no evidence demonstrating that each individual defendant's acts or omissions were with "malicious purpose, in bad faith, or in a wanton or reckless manner." *Id.* It should be noted, however, that although the parties extensively litigated the 42 U.S.C. 1983 claims in federal court, none of the

federal court filings or evidence filed therein were introduced in the lower court's record on remand. The only evidentiary material included in the record is a short transcript of C.A.'s deposition attached to the parties' respective motions. White exclusively cites documents ostensibly filed in the federal-court proceedings, but those filings have not been preserved in the record of this appeal. *See, e.g., State v. Johnson*, 2016-Ohio-4888, ¶ 5 (2d Dist.) (noting that a transcript from federal proceedings must be introduced in the trial-court record to preserve for appellate review). Thus, our factual review is limited to the federal court's recitation of the evidence.

**{¶ 41}** White argues that the exception to immunity under subsection (A)(6)(b) applies, but he does so by framing his argument on questions of fact pertaining to the merits of his claims of malicious prosecution, false arrest and imprisonment, intimidation and civil liability for criminal acts. This, however, is an interlocutory appeal under R.C. 2744.01 in which the trial court denied the political subdivision's employees the benefits of immunity. The sole issue is whether the political subdivision and its employees are entitled to immunity under the statutory framework. Accordingly, and after concluding that the city is immune as a matter of law, we must determine "whether, based on the evidence in the record, reasonable minds could conclude that [the individual employee of the political subdivision] acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity" being applied to that individual. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 15, quoting R.C. 2744.03(A)(6)(b). This exception to immunity

employs "rigorous standards that will in most circumstances be difficult to establish[.]" *Argabrite* at ¶ 8.

{¶ 42} As to this standard, White's sole argument is based on the lack of probable cause to arrest or detain White. According to White, malice under R.C. 2744.03(A)(6) "may be inferred from proof of lack of probable cause[.]" *Lorenzo v. Akron*, 2002-Ohio-7318, ¶ 17 (9th Dist.). This argument necessarily focuses on collateral estoppel and the scope of the federal court's conclusion that the officers and detectives had probable cause to arrest and detain White for prosecution. *See Ferrante v. Peters*, 2008-Ohio-3799 (8th Dist.) (concluding that collateral estoppel precluded the state court from relitigating issues resolved by the federal court on remand). Because collateral estoppel precludes further review of the probable-cause determination by the trial court, White is required to demonstrate that the officers each individually acted with a malicious purpose, in bad faith, or in a wanton and reckless manner to injure White despite having sufficient probable cause to arrest and detain him.

{¶ 43} Only the officers who participated in White's arrest and detention, however, can be held liable for those acts. Each political subdivision employee's conduct is separately analyzed when determining whether immunity under R.C. 2744.03(A)(6)(b) applies. *Morrison*, 2020-Ohio-4131, at ¶ 75 (8th Dist.), citing *Estate of Graves*, 2008-Ohio-6052, ¶ 29-35 (4th Dist.).

{¶ 44} As the federal court expressly concluded, Schade and Beveridge did not participate in the arrest, detention, or prosecution of White: "Neither Schade

nor Beveridge participated further in the investigation of White, the creation of the photo arrays at issue, the applications for arrest and search warrants, or the actual arrest of White." *White*, 2020 U.S. Dist. LEXIS 241429, at \*36 (N.D. Ohio Dec. 23, 2020). Further, White has not presented any evidence in this record demonstrating that Schade or Beveridge committed any acts or omissions resulting in White's detention or prosecution, much less those that would satisfy the R.C. 2744.03(A)(6)(b) standard. *Id.* at \*71-72. Simply conveying information to others based on their beliefs as to what occurred in other cases is not a sufficient basis to jump to the conclusion that they acted with malice, in bad faith, or in a reckless or wanton manner.

{¶ 45} As a result, White has failed to demonstrate an exception to individual immunity afforded to those two political subdivision employees. They are entitled to immunity as a matter of law, and the trial court erred in concluding otherwise.

{¶ 46} Kubas and Santiago were blind administrators of the disputed photo array that included Bunch instead of White. Being described by all parties as "blind administrators" necessarily means they were tasked with conducting the lineup with *no knowledge of the identity of the suspect*. *See* R.C. 2933.83(A)(2) ("'blind administrator' means the administrator does not know the identity of the suspect"); *White*, 2020 U.S. Dist. LEXIS 241429 at \*17 (concluding that Kubas and Santiago were "blind administrators" of the disputed photo array). White has not contested the fact of consequence that both Kubas and Santiago were "blind administrators"

as statutorily defined. He also has cited no evidence demonstrating any knowledge on their part as to specifics of the case.

{¶ 47} Even if we assumed that they indeed instructed the witnesses to not circle the photograph of Bunch based on some confusion, that confusion does not rise to the rigorous standards under R.C. 2744.03(A)(6)(b) for the purpose of breaching the immunity afforded to the political subdivision employees. It might be disputed evidence of negligence, but nothing more. Both Kubas and Santiago are entitled to immunity in light of the lack of evidence demonstrating that their acts were committed with malicious purpose, in bad faith, or in a reckless or wanton manner.

{¶ 48} This leaves Lam and Shoulders. White claims that there are issues of fact as to Lam and Shoulders' liability because there are questions regarding "whether Lam and Shoulders knew the statements supporting their arrest warrant were false." Appellee Brief at p. 34. For the purposes of Civ.R. 56, it is not enough to rest on mere allegations. "'Mere speculation and unsupported conclusory assertions are not sufficient' to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment." *Wilmington Trust N.A. v. Boydston*, 2017-Ohio-5816, ¶ 31 (8th Dist.), quoting *Loveday v. Essential Heating Cooling & Refrigeration, Inc.*, 2008-Ohio-4756, ¶ 9 (4th Dist.). White is required to produce evidence that Lam and Shoulders individually knew the statements supporting the arrest warrant were false at the time they submitted the affidavit to the court. Instead of focusing on their individual conduct, White lumps all the

employees' acts and omissions under the umbrella of the "the City's attempt to hide a certain police report" or that Lam and Shoulders could be found liable based on the alleged conduct of Kubas and Santiago. Appellee Brief at p. 34-35; *but see Morrison*, 2020-Ohio-4131, at ¶ 75.

{¶ 49} Although in general, "issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury[,] . . . where the record lacks evidence demonstrating that the political subdivision employee acted in such a manner," summary judgment in favor of the individual employee is appropriate. *Id.* at ¶ 80, citing *Schoenfield v. Navarre*, 2005-Ohio-6407 (6th Dist.). As a panel from this court has concluded, finding that officers acted with sufficient probable cause in the arrest, detention, and prosecution of a defendant impacts the R.C. 2744.03(A)(6)(b) determination. *Id.* at ¶ 83. After concluding that the 42 U.S.C. 1983 claims raised by the plaintiff were not viable based on the undisputed fact that the individual officers had probable cause to arrest, detain, and seek to prosecute the plaintiff, the *Morrison* Court applied that conclusion to determine that the finding of sufficient probable cause demonstrated that the officers were separately immune under R.C. 2744.03(A)(6)(b). *Id.*; *see also Thompson v. City of Lyndhurst*, 2019-Ohio-3277, ¶ 47 (8th Dist.) (concluding that there was no evidence of malice, bad faith, or wanton or reckless misconduct for the purposes of R.C. 2744.03(A)(6)(b) because there was probable cause for the arrest, detention, and issuance of an indictment); *Wiggins v. Kumpf*, 2015-Ohio-201, ¶ 20 (2d Dist.) (concluding that the exception to immunity under R.C. 2744.03(A)(6)(b) was

inapplicable based on the fact that the officer had probable cause to arrest the plaintiff).

{¶ 50} Because the federal court in this case found probable cause to support the arrest, detention, and initial prosecution of White, it must likewise be concluded that White is unable to demonstrate any issues of material fact as to whether Lam or Shoulders acted with malice, bad faith, or in a wanton or reckless manner. *Morrison* at ¶ 83. Accordingly, the trial court erred in denying them the benefits of immunity under R.C. 2744.03(A)(6).

{¶ 51} For these reasons, I concur in part with the lead opinion. I agree that the city is entitled to immunity as a matter of law and join that portion of the opinion, but the trial court's decision as to the individual employees is reversed. The city and its employees are entitled to immunity because White failed to demonstrate the applicability of R.C. 2744.03(A)(6)(b) and the trial court should have entered judgment in their favor on all claims.

## Conclusion

{¶ 52} The City's first assignment of error is sustained. We reverse the trial court's denial of political-subdivision immunity for the City. The City is entitled to summary judgment on White's state-law claims.

{¶ 53} We overrule the City's second assignment of error to the extent that it seeks a jurisdictional finding not before the court.

{¶ 54} Appellants' third assignment of error is sustained. We reverse the trial court's denial of employee immunity for the Officers and Det. Lam on White's claims

for malicious prosecution, false arrest, and false imprisonment. (Claims 6, 7, and 8.) The majority of the court concludes that the City and the officers have immunity.

{¶ 55} Appellants' fourth assignment of error is sustained. We reverse the trial court's denial of summary judgment on Claims 9 and 10, intimidation under R.C. 2921.03 and civil liability under R.C. 2307.60.

{¶ 56} Appellants' fifth assignment of error is moot. This matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee and appellants split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS IN PART (WITH SEPARATE OPINION)


ANITA LASTER MAYS, J., DISSENTING IN PART:

{¶ 57} I fully concur with the lead opinion's conclusion as to the City of Cleveland's entitlement to statutory immunity. Notwithstanding, I respectfully disagree with the portion reversing the trial court's decision granting the individual

defendant police officers and detectives the benefits of immunity conferred under R.C. 2744.03(A)(6).

**The Officers and Det. Lam**

{¶ 58} The Officers and Det. Lam argue that the trial court erred by denying their claims of individual immunity under R.C. 2744.03(A)(6)(b) and (c). At the core of their argument is that the federal court's findings — when it granted summary judgment for the City on White's claims under 42 U.S.C. 1983 for malicious prosecution, false arrest, and false imprisonment — preclude the trial court from determining whether genuine issues of material fact remain as to White's parallel state-law claims for malicious prosecution, false arrest, or false imprisonment under R.C. 2744.03(A)(6).

{¶ 59} The Officers and Det. Lam argue that the trial court is barred from considering whether there are genuine issues of material fact concerning a lack of probable cause in this case. They rely on collateral estoppel (issue preclusion), which prohibits reexamining an issue that was 1) actually litigated, 2) determined by a court of competent jurisdiction, and 3) involves the same parties or their privies. *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). Collateral estoppel can only preclude the trial court from considering whether genuine issues of material fact remain if appellants can prove the exact probable-cause issues were litigated or determined by the district court. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 2008-Ohio-6254, ¶ 28. Appellants have failed to prove the district court found probable cause for White's continued prosecution after his bindover hearing.

**{¶ 60}** The court acknowledged probable-cause issues were relevant at two points in White's prosecution: (1) White's initial arrest and (2) after the victims allegedly identified Bunch. The court analyzed White's malicious prosecution claims in light of two points in time in which appellants' actions may have affected White's prosecution. However, the district court made no probable-cause determinations relating to White's continued detention and prosecution once exculpatory evidence implicated Bunch as the shooter. The gravamen of a malicious prosecution offense is continued detention without probable cause. *Tlapanco v. Elges*, 969 F.3d 638, 654 (6th Cir. 2020), fn. 3, *accord Gregory v. Louisville*, 444 F.3d 725, 747, 750 (6th Cir. 2006).

**{¶ 61}** To prevail on a malicious prosecution claim where prosecution continued without probable cause, White must prove malice in continuing the prosecution and that the prosecution terminated in his favor. *Coleman v. Beachwood*, 2009-Ohio-5560, ¶ 19 (8th Dist.). "In other words, a defendant can recover for a prosecution that was not malicious at its inception, but only became malicious later, when it continued without probable cause." *Selective Ins. Co. v. RLI Ins. Co.*, 706 Fed.Appx. 260, 266 (6th Cir. 2017). "The key issue is whether there was probable cause and when any probable cause disappeared." *Id.* Here, the district court specifically limited its probable cause findings to White's arrest warrant stating:

> Even if the Court assumes these false statements and omissions were made deliberately and knowingly or with a reckless disregard for the truth and assesses the warrant application as if it had excluded the false

statements and included the information omitted-taking into account that several of White's blanket statements are not completely accurate, as discussed below-probable cause still supported the warrant for White's arrest.

*White*, No. l:17-cv-1165 J.E. at 25-26.

**{¶ 62}** Notably, the court made no determinations regarding whether the Officers' or Lam's actions were malicious, in bad faith, wanton, or reckless. It is well settled that summary judgment in favor of a political subdivision's employee is appropriate only when the facts are clear and fail to rise to the level of conduct that could be construed as malicious, in bad faith, or wanton and reckless. *Pierce v. Woyma*, 2012-Ohio-3947, ¶ 15 (8th Dist.). The Eighth District Court of Appeals previously addressed this issue in *Ferrante v. Peters* 2008-Ohio-3799 (8th Dist.). Officers were accused of excessive force in their handling of a report of a man with a gun. The plaintiff filed suit with overlapping state and federal claims. Like the present case, Ferrante was removed to federal district court where the officers claimed qualified immunity. In *Ferrante*, district court also granted summary judgment on the federal claims in favor of the officers and remanded the state claims back to the state court. The district court specifically determined that the officer's actions were neither "malicious" nor "sadistic" and thus, protected from liability on the federal claims. Upon remand, the officers argued that the state court had to accept the district court's findings. On appeal, this court agreed that the district court's determination that the officer's actions were not malicious and were in good

faith were precluded from reexamination by the state court, thus the officers were entitled to immunity.

{¶ 63} I find no conflict between our holding in *Ferrante* and our findings herein. Collateral estoppel precludes the state court from revisiting any issue of fact or law passed upon and determined by a court of competent jurisdiction. *Id.* at ¶ 20. In *Ferrante*, the district court determined that the officer's actions were not malicious and were in good faith.

{¶ 64} In contrast, the district court in this case determined there were genuine questions of material fact surrounding White's continued prosecution after it became clear that there was no longer probable cause to prosecute him. The court provided:

> White has presented sufficient evidence to create a genuine dispute of fact as to whether Kubas and Santiago deliberately falsified documents that could foreseeably contribute to a decision to continue to prosecute White.

*White*, No. l:17-cv-1165 J.E. at 43.

{¶ 65} In this case, the issue of whether a genuine issue of material fact, concerning White's continued prosecution, remains, was passed upon and determined by the district court. The district court made a legal determination that a genuine dispute of fact indeed existed, concerning probable cause to continue prosecuting White. Consequently, collateral estoppel precludes us from revisiting this issue. Accordingly, I would find that we must accept the district court's finding that White offered sufficient evidence of a genuine issue of material fact that would

create an exception to immunity for the officers. As articulated by the district court, questions of fact are resolved by the trier of fact. *Id*. at 26.

{¶ 66} Furthermore, in *Ferrante*, the district court specifically found that the officers' actions were not malicious or sadistic and were in good faith. When the district court's findings were considered in state court, under R.C. 2744.03(A)(6), no exceptions to immunity applied. Therefore, summary judgment was proper. On the other hand, here, the district court did not pass on or determine the character of the officers' actions under R.C.2744.03(A)(6) at all. Instead, it granted summary judgment on other grounds and remanded the matter for the trial court to determine.

### Political-Subdivision-Employee Immunity

{¶ 67} R.C. 2744.03(A)(6) generally immunizes employees of political subdivisions performing governmental functions, unless: 1) the employee acts manifestly outside the scope of official responsibilities; 2) the employee acts with malicious purpose, in bad faith, or in a wanton or reckless manner; or 3) another Revised Code provision expressly imposes civil liability. Whether an individual acted manifestly outside the scope of employment, and whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact. *E.g., Clark v. Campbell*, 2020-Ohio-3333, ¶ 32 (4th Dist.).

### Malicious Prosecution, False Arrest, and False Imprisonment

{¶ 68} White's overlapping state and federal law claims against the individual defendants are malicious prosecution, false arrest, and false

imprisonment. The federal malicious prosecution claims were disposed of in summary judgment by the district court. The elements required to satisfy federal malicious prosecution claims involving Fourth Amendment rights, pursuant to 42 U.S.C. 1983, are distinguishable from those required to satisfy malicious prosecution claims under Ohio law.

{¶ 69} Federal malicious prosecution claims require the plaintiff to prove (1) that a criminal prosecution was initiated against him, (2) that the defendant made, influenced, or participated in the decision to prosecute, (3) there was a lack of probable cause for the criminal prosecution, and (4) the plaintiff suffered a deprivation of liberty because of the legal proceedings. *Gregory v. Louisville*, 444 F.3d 725, 748-750 (6th Cir. 2006).

{¶ 70} On the other hand, Ohio law requires a plaintiff alleging malicious prosecution to prove the defendant acted with (1) malice in instituting or continuing the prosecution, (2) there was a lack of probable cause, and (3) the prosecution terminated in favor of the accused. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144 (1990).

{¶ 71} The elements of false arrest and false imprisonment claims are essentially the same. Both require the (1) intentional detention of a person and (2) unlawfulness of the detention. *Ficklin v. Home Depot U.S.A., Inc.*, 2010-Ohio-5601, ¶ 34 (8th Dist. 2005). A valid arrest warrant issued by a court is a complete defense to an action for false arrest or false imprisonment. *McFarland v. Shirkey,* 106 Ohio App. 517, 524 (10th Dist. 1958). However, this defense is not available if an officer,

in obtaining the arrest warrant, (1) knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions and 2) the false statements or omissions were material, or necessary, to the finding of probable cause. *E.g., Meekins v. Oberlin*, 2019-Ohio-2825, ¶ 49 (8th Dist.).

{¶ 72} During the bindover hearing, the court learned that Officers Kubas and Santiago were accused of suppressing exculpatory evidence during the photo array process. Furthermore, witness testimony indicated the witnesses were instructed not to circle identifications of a suspect other than White. The juvenile court specifically found no probable cause that White was part of the C.A.'s home invasion; however, it did not dismiss the case. When the district court analyzed probable cause for purposes of summary judgment on White's federal claims, it found that White had presented sufficient evidence to create a genuine dispute of fact as to whether Kubas and Santiago deliberately falsified documents that could foreseeably contribute to a decision to continue to prosecute White. The district court determined that White's evidence was clearly sufficient to establish a genuine issue of material fact regarding whether Kubas and Santiago's actions were deliberate.

{¶ 73} Despite these findings, the district court granted summary judgment in favor of Kubas and Santiago on the federal malicious prosecution claims. The court explained that White's malicious prosecution claims against Kubas and Santiago failed not because there was sufficient probable cause to continue

prosecuting White, but because there was no evidence that Kubas and Santiago's alleged actions "actually influenced White's continued prosecution and detention."

**{¶ 74}** State malicious prosecution claims do not require such findings. "[I]n an action for malicious prosecution, the want of probable cause is the gist of the action." *E.g., Edvon v. Morales*, 2018-Ohio-5171, ¶ 24 (8th Dist.), quoting *Melanowski v. Judy*, 102 Ohio St. 153 (1921), paragraph one of the syllabus. "If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." *Id.* Moreover, concerning Kubas's and Santiago's actions, the district court found that "White's evidence is clearly sufficient to establish a genuine issue of fact. And if such exculpatory evidence was withheld, it is foreseeable that it would influence the decision of whether to prosecute White." *White*, No. l:17-cv-1165 J.E. at 44.

**{¶ 75}** The district court did not resolve these disputed factual issues. In support of its decision to deny supplemental jurisdiction, the district court explicitly recognized the potential for overlap of its probable-cause analysis related to White's arrest; not his continued detention. *Id.* at 54. The court explained that probable-cause determinations are a mixed question of law and fact. *Id.* at 26. The court resolves probable cause questions of law, and the trier of fact resolves issues of disputed fact that are material to a probable-cause determination. *Id.*

**{¶ 76}** In the instant case, the district court found that White had presented sufficient evidence to create a genuine dispute of a material fact that could have contributed to a decision to continue prosecuting him. *Id.* at 43. When disputed

factual issues underlying probable cause exist, the issues must be submitted to a jury for a determination of the appropriate facts. *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, ¶ 50 (8th Dist.), quoting *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005.) At no point in its opinion does the district court make a finding that probable cause existed to continue White's prosecution after the bindover hearing. Consequently, collateral estoppel does not preclude the trial court from submitting to a jury the genuine issues of material fact underlying White's claims for malicious prosecution, false arrest, and false imprisonment against Kubas and Santiago. Therefore, I would find that the trial court properly denied summary judgment on White's state-law malicious prosecution, false arrest, and false imprisonment claims. I would affirm the trial court's denial of summary judgment on Claims 6, 7, and 8 against the Officers and Det. Lam.

### Intimidation and Civil Liability for Criminal Acts

{¶ 77} I would also affirm the trial court's judgment regarding intimidation and civil liability for criminal acts. White also asserts claims under R.C. 2921.03 (intimidation) and R.C. 2307.60 (civil liability for criminal acts). The Officers and Lam argue the trial court erred in denying summary judgment because they are entitled to immunity as employees of a political subdivision, under R.C. 2744.03(A)(6). White alleges that appellants filed materially false or fraudulent writings (e.g., arrest affidavits, photo-lineup materials) intending to influence or

obstruct justice, thus violating R.C. 2921.03 and 2921.45. White further contends these violations support a civil remedy under R.C. 2307.60(A)(1). The federal court expressly declined to address these claims, noting they raised "numerous purely state law issues" and possible statute-of-limitations questions unique to Ohio law.

**{¶ 78}** The Officers and Det. Lam argue that White has abandoned these claims. But the record reflects extensive discovery and briefing. The trial court concluded there were genuine issues of material fact precluding summary judgment, and I find no indication that White affirmatively abandoned or conceded those claims. Furthermore, as previously addressed, the district court made no findings regarding whether any of the Officers or Lam acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Because the federal court did not address these claims, collateral estoppel does not preclude the trial court from determining that there are genuine issues of material fact for White's claims of intimidation and civil liability for criminal-acts claims. Accordingly, the employees' entitlement to immunity under R.C. 2744.03(A)(6) is a question for the trier of fact.

**{¶ 79}** I would affirm the trial court's judgment denying summary judgment on Claims 9 and 10, intimidation and civil liability for criminal acts and overrule the fourth assignment of error.